**IOWA STATE BANK & TRUST CO., Appellee,**

v.

**Phillip H. MICHEL and Marci K.Z. Michel, Appellants.**

No. 02–1055.

Supreme Court of Iowa.

May 12, 2004.

As Modified Upon Denial of Rehearing July 9, 2004.

Thomas L. Fiegen, Susan Daufeldt, and John G. Daufeldt of Fiegen Law Firm, P.C., Cedar Rapids, for appellants.

Gregg Geerdes, Iowa City, for appellee.

TERNUS, Justice.

This case concerns efforts by the plaintiff, Iowa State Bank & Trust Co., to reach homestead property owned by the defendants, Phillip and Marci Michel, to satisfy a personal judgment entered against the defendants on a defaulted loan. Although the Michels waived the statutory homestead exemption applicable to their property when they mortgaged the property as security for the loan, they did not sign the agricultural homestead disclosure required by Iowa Code section 561.22 (1997) for homestead exemption waivers on agricultural property. The trial court held the mortgage was enforceable despite the absence of a signed disclosure, after determining that the Michels' forty-seven-acre parcel was not agricultural land subject to section 561.22. In addition to upholding the written mortgage, the trial court found the bank was entitled to an equitable mortgage under various equitable theories. Finally, the court held that even if the bank was not entitled to foreclose on the defendants' homestead, their homestead, by statute, was limited to forty acres.

On the defendants' appeal, the court of appeals concluded the homestead was agricultural property within the meaning of section 561.22, rendering the bank's mortgage unenforceable. The court of appeals affirmed the district court, however, concluding the bank was entitled to an equitable mortgage.

The Michels were granted further review. Upon our consideration of the arguments of the parties, we think the court of appeals was only partially correct. We agree the defendants' property is agricultural land and therefore the bank's mortgage is unenforceable as to the homestead because the bank did not have the debtors sign the required agricultural homestead disclosure. On the other hand, we do not think the bank is entitled to an equitable mortgage. Accordingly, we vacate the court of appeals decision.

The Michels did not contest the trial court's alternative ruling that their homestead rights are limited to forty acres, thereby rendering seven acres of their property subject to foreclosure under the mortgage. Consequently, we affirm the trial court's judgment of foreclosure with respect to seven acres of the defendants' property and reverse the district court's judgment foreclosing the bank's mortgage on the Michels' forty-acre homestead.

I. *Scope of Review.*

Review of an equitable claim to foreclose a mortgage is de novo. *Beal Bank v. Siems,* 670 N.W.2d 119, 123 (Iowa 2003). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R.App. P. 6.14(6)(*g* ).

II. *Background Facts and Proceedings.*

The Michels own forty-seven acres of land in rural Johnson County, Iowa. The area is zoned residential, although land in the vicinity of their property includes farms as well as residential areas. The defendants' home is located on this land and there is no dispute forty acres of the

property qualifies as their homestead. *See* Iowa Code §§ 561.1 (defining "homestead"), 561.2 (limiting homestead not in city plat to forty acres). In addition to residing on the property, the Michels use eight acres of their land to pasture horses that they keep for their personal use. The defendants rotate corn, soybeans, oats, and hay on fifteen acres of their land and another fifteen acres is currently enrolled as a forest reservation.[1]

In 1998 the defendants borrowed $225,000 from the bank to finance their investment in a convenience store. As security for the loan, they gave the bank a second mortgage on their property. Included in the mortgage agreement was a specific waiver of "all homestead or other exemptions to which [the Michels] would otherwise be entitled under any applicable law." In addition, the mortgage included the language required by Iowa Code section 561.22, but the bank, operating under the belief that the defendants' property was not "agricultural land," did not check the box by this section of the mortgage to indicate its applicability nor did the bank have the Michels sign and date this provision as required by the statute.

The convenience store was unsuccessful, causing the Michels to default on their loan. The bank then filed a petition to foreclose on the mortgage and requested a personal judgment against the defendants as well. The bank also raised various equitable theories for relief. The Michels asserted the bank's noncompliance with section 561.22 barred foreclosure.

After trial, the district court ruled the Michels' property was not agricultural land and therefore the bank did not have to obtain the signed disclosure required when the owner of agricultural land waives the homestead exemption. The court relied on several factual findings: (1) 32 of the 47 acres owned by the Michels had never been used for agricultural purposes; (2) no net income had ever been generated from the production activities conducted on the other fifteen acres, which had been used at various times to grow hay, soybeans, oats, and corn; (3) the defendants had never worked the land themselves, but had entered into crop-share leases with tenants; and (4) the property was zoned residential because, according to the county assessor, there was no bona fide farming operation on the land. Even though the court concluded section 561.22 did not apply and the mortgage was valid, it also held that each of the equitable theories asserted by the bank as a basis for equitable relief—equitable mortgage, specific performance, waiver/estoppel, reformation, constructive trust, and subrogation—were proven.

Based upon its findings of fact and conclusions of law, the district court entered judgment against the defendants in the sum of $292,704.48 plus interest. The court held the judgment was secured by the mortgage given on the Michels' homestead and that the mortgage was enforceable against the defendants' interest in that property. To carry out the equitable remedies found to be applicable, the court ordered the defendants to sign a mortgage and homestead waiver in favor of the bank. The court also deemed the bank to be a beneficiary of a constructive trust and holder of an equitable mortgage that the bank could enforce by sheriff's sale. Finally, the court held that even if the bank

---

1. Establishment of a forest reservation under Iowa Code chapter 427C entitles the landowner to a tax exemption for each year that the property is maintained as a forest reservation. *See* Iowa Code § 427C.1. The land-

owner must not permit livestock on the designated tracts of land, nor may the owner use the land for economic gain other than the gain from raising forest or fruit trees. *See* Iowa Code § 427C.10.

had failed to obtain a valid waiver of the defendants' homestead exemption, only forty of the forty-seven acres were exempt. In a post-trial ruling, the court awarded the bank attorney fees.

The defendants appealed, alleging error in the court's enforcement of the mortgage and the award of attorney fees. The Michels did not contest the personal judgment entered against them for the balance due on their loan. After filing the appeal, the defendants posted a supersedeas bond in order to stay proceedings under the judgment. As security for the bond, the Michels pledged their forty-seven-acre property.

The case was transferred to the court of appeals. Initially, the court rejected the bank's claim that the appeal was moot since the defendants had signed a waiver incorporating the agricultural homestead disclosure required by section 561.22 when they posted their land as security for the bond. The court then determined the Michels' property was agricultural land because it was "suitable for use in farming," as that phrase is used in the statutory definition of "agricultural land" found in Iowa Code section 9H.1(2). Based on this conclusion, the court of appeals held the bank's mortgage was unenforceable because the bank had not obtained the signed disclosure required by section 561.22. Nonetheless, because the evidence clearly established that the Michels knew they were mortgaging their homestead and intended to do so, the court held the bank had an equitable mortgage on the property that it could foreclose. As a final matter, the court rejected the defendants' challenge to the attorney fee award. The court ruled that the post-trial decision on attorney fees addressed a collateral matter and the defendants were required to file a separate notice of appeal to contest this award, which they had not done.

We granted the Michels' application for further review. They claim the court of appeals erred in ruling the bank was entitled to an equitable mortgage and in requiring a separate appeal of the attorney fee award. Although the bank resisted the defendants' application, it asserted that in the event further review was granted, this court should correct the court of appeals' decision in two particulars: (1) rule that the Michels' property was not agricultural land subject to the protection of section 561.22; and (2) hold that the posting of the homestead as security for the supersedeas bond waived the defendants' claim that the property was exempt. Should it become necessary, the bank also asks that we consider the other equitable theories the district court found applicable.

III. *Effect of Using Homestead Property as Security for Supersedeas Bond.*

█ The bank contends this appeal is moot because it can collect the unchallenged personal judgment under the terms of the bond, reaching the homestead property in this manner. This argument is based on the bank's supposition that the defendants' failure to appeal the personal judgment operated as an affirmance of that judgment, thereby making the bond available to satisfy it. We agree with the court of appeals that this argument has no merit.

█ The weakness in the bank's argument is revealed by an examination of two provisions of the Iowa Rules of Appellate Procedure. Rule 6.7(1) requires as a "condition of [a supersedeas] bond ... that appellant will satisfy and perform the judgment *if affirmed.*" Iowa R.App. P. 6.7(1) (emphasis added). Rule 6.9 provides in pertinent part:

If an appellate court *affirms the judgment appealed from,* it may, on motion

of appellee, render judgment against appellant and the sureties on the appeal bond for the amount of the judgment, with damages and costs.

Iowa R.App. P. 6.9 (emphasis added). It is apparent from the express language of these rules that a supersedeas bond guarantees payment of and is available to satisfy only a judgment that is "appealed from" and "affirmed." *See generally Edge v. Harsha,* 334 N.W.2d 741, 742 (Iowa 1983) ("A supersedeas bond is a method of keeping creditors at bay to maintain the status quo until an appeal is decided.").

The bank claims the Michels' "failure to assign error on the personal liability [issue] requires that the trial court's ruling on [this issue] be affirmed," citing our decision in *Rector v. Alcorn,* 241 N.W.2d 196 (Iowa 1976). We disagree. In fact, our discussion in the *Rector* case supports our rejection of the bank's argument. In *Rector,* this court quoted the well-established rule that " '[a] proposition neither assigned nor argued presents no question and need not be considered by us on review.' " 241 N.W.2d at 200 (citation omitted). We said this rule applies in appeals of equity actions as well as in appeals of actions tried at law. *Id.*

■ Given this rule, it cannot fairly be said that an appellate court affirms a ruling that has not even been assigned as error or considered by the court on appeal. Such a ruling is neither "appealed from" nor "affirmed" within the contemplation of our rules of appellate procedure. For this reason, the personal judgment entered against the Michels by the trial court was not secured by the supersedeas bond they filed. That bond only secured the judgment "appealed from," which was the Michels' challenge to the judgment foreclosing the bank's mortgage. Therefore, the bank cannot reach the Michels' homestead by recovering on the bond unless and only

to the extent the district court's decision granting foreclosure is affirmed. Accordingly, this appeal is not moot.

IV. *Correctness of Trial Court's Determination the Michels' Homestead Was Not Agricultural Land.*

■ "Homestead rights are jealously guarded by the law." *Merchants Mut. Bonding v. Underberg,* 291 N.W.2d 19, 21 (Iowa 1980). One way in which the legislature has protected homesteads is to make them exempt from execution. *See* Iowa Code § 561.16. This exemption may, however, be waived by the property owner for debts "created by written contract by persons having the power to convey, expressly stipulating that [the homestead] shall be liable." Iowa Code § 561.21.

In addition to these provisions the legislature has adopted additional protections for agricultural land. In response to a national economic recession in agriculture, the general assembly enacted a legislative package in 1986 known as the "Farm Crisis Program." *West Des Moines State Bank v. Mills,* 482 N.W.2d 432, 433 (Iowa 1992) (citing 1986 Iowa Acts ch. 1214). This legislation included a variety of measures that "were aimed at easing the plight of economically ·depressed farmers." *Id.* One of these provisions, which we quote in its current form, was Iowa Code section 561.22, which provides in pertinent part:

If a homestead exemption waiver is contained in a written contract *affecting agricultural land as defined in section 9H.1,* or dwellings, buildings, or other appurtenances located on the land, the contract must contain a statement in substantially the following form, in boldface type of a minimum size of ten points, and be signed and dated by the person waiving the exemption at the time of the execution of the contract: **"I understand that homestead property**

**is in many cases protected from the claims of creditors and exempt from judicial sale; and that by signing this contract, I voluntarily give up my right to this protection for this property with respect to claims based upon this contract."**

Iowa Code § 561.22 (italics added).[2] The legislature hoped this additional "procedural step" in the waiver of homestead rights on agricultural land would "encourage second thoughts about executing the waiver" by "remind[ing] the person signing the waiver that it was important." *Mills*, 482 N.W.2d at 435.

■ In deciding whether the protection afforded by section 561.22 applies to the situation at hand, we think the determinative issue is whether the mortgage the bank seeks to foreclose affects "agricultural land as defined in section 9H.1." Iowa Code § 561.22. The term "agricultural land" is defined in section 9H.1 as "land suitable for use in farming." Iowa Code § 9H.1(2). Chapter 9H also defines the word "farming" as

> the cultivation of land for the production of agricultural crops, the raising of poultry, the production of eggs, the production of milk, the production of fruit or other horticultural crops, grazing or the production of livestock. Farming shall not include the production of timber, forest products, nursery products, or sod and farming shall not include a contract where a processor or distributor of farm products or supplies provides spraying, harvesting or other farm services.

Iowa Code § 9H.1(19). Thus, pertinent to this case, farming encompasses crop production and grazing. A "crop" includes

plants "that can be grown and harvested extensively for profit or subsistence," in other words for income or as a source of food. *Webster's Third New International Dictionary* 540 (unabr. ed.2002) (defining "crop"); *id.* at 2279 (defining "subsistence").

The error made by the bank and the district court is their misplaced focus on the definition of farming to the exclusion of the limiting language—"suitable for use in"—found in the definition of "agricultural land." The bank contended and the district court found that the Michels were not actively nor personally engaged in farming on their property and from this fact drew the conclusion that their land was not, therefore, "agricultural land." But "agricultural land" is not defined as land actively used for farming by the owner or someone else; it is defined as land *suitable* for farming. *See In re Wagner*, 259 B.R. 694, 699–700 (B.A.P. 8th Cir.2001) (upholding bankruptcy court's finding that debtors' property was agricultural land within meaning of section 561.22, even though the debtors were not raising livestock on the land as represented to the bank, "because the land was clearly suitable for farming").

Focusing then on the suitability of the Michels' land for farming, we conclude based upon our de novo review of the record that the Michels' property qualifies as "agricultural land" because the evidence clearly establishes that their property was, in general, fit for use in crop production and grazing. Eight acres of the forty-seven-acre parcel is pasture land that is currently used for horses, but is also suitable for grazing livestock. Fifteen acres is tillable and has been used to grow various crops over the years. The most prevalent

2. When section 561.22 was first adopted, its reach was not expressly restricted to the waiver of homestead exemptions on agricultural land. *Mills*, 482 N.W.2d at 434. The very year after enactment, however, the legislature amended the statute to limit its application to agricultural land. *Id.* (citing 1987 Iowa Acts ch. 67, §§ 1, 2).

crop has been hay that is used to feed the Michels' horses. Portions of the eight acres where the defendants' home sits could also be tilled, although it has not been used for crop production in the past. The only part of the property that is arguably not suitable for farming is the sixteen acres established as a forest reservation that are heavily wooded and ravine-filled. There was testimony, however, that even these acres could be used for grazing livestock if the property were taken out of the forest reservation program. In addition, the assessor who had classified the property as residential acknowledged parts of the property were suitable for farming. Even if we conclude that not all of the forty-seven acres are fit for raising crops or livestock, we think the fact that thirty-one acres of the Michels' property could be used for farming is sufficiently sizable or extensive to categorize the property as agricultural land.[3] *See In re Wagner,* 259 B.R. at 699 (affirming bankruptcy court's finding that parcel of less than six acres was "agricultural land"). *See generally Cox v. Waudby,* 433 N.W.2d 716, 719 (Iowa 1988) (noting "exemption statutes are to be liberally construed in favor of the debtor").

■ Our interpretation of the governing statutory provisions necessarily requires that we reject the district court's rationale for concluding the Michels' property is not agricultural land. Contrary to the district court's reasoning, whether the land is currently being farmed, whether the property owners are themselves capable of farming the land, and whether the parcel is large enough to be an independently profitable farm, while relevant factors, are not determinative. Moreover, the fact that the property is in a residential zoning district does not preclude a finding that it is agricultural land where, as here, the zoning classification does not prohibit farming operations on the property. In conclusion, if the land is fit for grazing or is capable of being cultivated to produce agricultural crops, it qualifies as agricultural land. The district court erred in adding requirements to the statute that went beyond the express terms chosen by the legislature. *See State v. Johnson,* 630 N.W.2d 583, 586 (Iowa 2001) (stating court "will not 'read something into the law that is not apparent from the words chosen by the legislature'" (citation omitted)).

■ We also reject the district court's determination that the final explanatory sentence of the definition of farming operates to exclude the defendants' property from the definition of agricultural land. Section 9H.1(19) states that "farming shall not include a contract where a processor or distributor of farm products or supplies provides spraying, harvesting or other farm services." The district court concluded that because the Michels routinely hired spraying and fertilizing services and also engaged in crop sharing arrangements for crop production, even the fifteen tilled acres did not fall within the definition of farming. We think the district court's

3. The bank argues that the fifteen acres upon which the Michels' home sits does not qualify as agricultural land and therefore the defendants should not benefit from section 561.22. We think, however, the parcel must be considered in its entirety in deciding whether the Michels' land is agricultural. *Cf. Qualley v. State Fed. Sav. & Loan,* 487 N.W.2d 353, 357 (Iowa Ct.App.1992) (holding "the inclusion of agricultural and nonagricultural property in the same contract" did not avoid the applicability of the farm mediation statute, which applied to "agricultural land that is principally used for farming," where the land was sold as one parcel). Although only forty acres of the property may be included in the homestead, *see* Iowa Code § 561.2, the forty-acres that constitute the Michels' homestead have not been designated and so we consider all forty-seven acres in determining whether the property as a unit is suitable for use in farming.

interpretation of section 9H.1(19) is wrong. As the Michels point out, it is not uncommon for those engaged in crop production to hire others to perform some of the required tasks such as spraying or harvesting. If such arrangements meant that these landowners were not producing crops on agricultural land, then very few persons would be entitled to the disclosure required by section 561.22. A more reasonable interpretation of the final sentence of section 9H.1(19) is that the legislature intended to prevent "a processor or distributor of farm products or supplies" who also provides "spraying, harvesting or other farm services" from claiming they are engaged in farming. Clearly, the Michels are not distributors or processors of farm products or supplies. Therefore, they are not categorically excluded from the definition of farming. More importantly, even if the trial court had been correct in determining that the Michels are excluded from the definition of farming, that fact alone would not preclude a conclusion that their land is, nonetheless, *suitable* for farming and, therefore, agricultural land.

■ Finally, we reject the bank's argument, adopted by the district court, that section 561.22 does not apply because the defendants are not the type of persons the legislature intended to assist when it enacted this statute. The district court reasoned, "The legislature was not concerned with protecting … people who, like the Michels, live in a rural area as a matter of lifestyle choice and not because they are a farmer." Based on the legislative history of section 561.22, the district court may be right that the Michels are not the prototypical type of person who suffered from the agricultural economic recession that prompted the general assembly to enact this statute. Nonetheless, we must determine legislative intent from the words used by the legislature and, as we have already discussed, the legislature gave the protection afforded by section 561.22 to all owners of land suitable for farming, not just those owners actively engaged in farming. *Compare* Iowa Code § 9H.1(2) (defining "agricultural land" as "land suitable for use in farming"), and Iowa Code § 9H.1(19) (defining "farming"), *with* Iowa Code § 9H.1(1) (defining the term "actively engaged in farming"). We think the breadth of this statute makes sense when one considers that the legislature may have wanted to benefit retired farmers who still own and live on their land but no longer personally farm it. As a final point, if the legislature had wanted to limit the applicability of section 561.22 to those actively farming the land, it could easily have done so. *Compare* Iowa Code § 561.22 (applying disclosure requirement to "land suitable for use in farming"), *with* Iowa Code §§ 159A.4(1)(*j* ) (requiring person on Renewable Fuels and Coproducts Advisory Committee to be "actively engaged in farming"), 161C.6(1)(*b* ) (resting eligibility for organic nutrient management program on whether person is "actively engaged in farming"), 654A.1 (defining "agricultural property" for purposes of farm mediation statute as "agricultural land that is principally used for farming"). Its failure to do so precludes this court from narrowing the reach of the statute.

V. *Substantial Compliance with Section 561.22.*

■ The bank argues alternatively that it substantially complied with section 561.22 when it had the defendants sign a document that included the following language:

> **Security interest:** We will take a mortgage on your home. You could lose your home if you do not meet the obligations in your agreement with us.

Additionally, it argues, the Michels knew they were mortgaging their home as collateral for the loan.[4]

▇▇▇ We need not determine whether substantial, as opposed to strict, compliance is sufficient because the circumstances upon which the bank relies fail to establish even substantial compliance with section 561.22. In deciding whether a party has substantially complied with a statutory requirement, we evaluate whether the asserted compliance assures that the reasonable objectives of the statute will be met. *See Harrison v. Employment Appeal Bd.*, 659 N.W.2d 581, 586 (Iowa 2003). We do not think such assurance is present here.

▇▇▇ First, informing a debtor that he is mortgaging his home is not the same as informing the debtor that he is waiving his homestead exemption right by doing so. Although a debtor may understand he has pledged his home as collateral for a loan, he may not realize that he no longer has the benefit of the homestead exemption. *See Red River State Bank v. Reierson*, 533 N.W.2d 683, 687 (N.D.1995) (noting statute requiring explanation of homestead exemption waiver similar to section 561.22 reflected the legislature's "concern many borrowers did not know they were waiving exemption rights by mortgaging their homesteads"). As we have already observed, the primary purpose of section 561.22 is to impress upon debtors the significance of waiving their

homestead exemption. *See Mills,* 482 N.W.2d at 435. Where, as here, the contract clause purportedly complying with section 561.22 does not even mention the homestead exemption, there cannot be substantial compliance. *Cf. Harrison,* 659 N.W.2d at 587 (holding no substantial compliance where required notice was given to employee orally rather than by certified mail as required by statute since oral notice did not impress upon employee importance of matter as contemplated by statute); *Burnham v. City of West Des Moines,* 568 N.W.2d 808, 811 (Iowa 1997) (holding no substantial compliance with statute requiring that sheriff be given notice of appeal of compensation commission's decision because purpose of statute was not accomplished where sheriff was given no notice of any kind).

Furthermore, we do not think the defendants' subjective understanding of the transaction constitutes substantial compliance or excuses the bank's noncompliance with the statute. This precise argument was rejected by the North Dakota Supreme Court interpreting a similar statutory provision in *Red River State Bank.* Under North Dakota law, mortgages on any homestead must include a conspicuous statement informing the debtor "that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale" and, that by signing the mortgage, the debtor is giving

---

4. Although an agricultural homestead disclosure was included in the mortgage documents signed by the Michels, the bank does not argue that this fact establishes substantial compliance. The bank's apparent recognition of the weakness of such an argument is perhaps based on the following facts: (1) the agricultural homestead disclosure appeared on a separate page *after* the page upon which the Michels signed; (2) a blank box at the margin near the disclosure was not checked, indicating it was not applicable (indeed, the

bank did not believe section 561.22 applied to the Michels' land); and (3) it appears this section was not brought to the attention of the defendants at the time the mortgage was executed (there is no dispute the agricultural homestead disclosure was not signed and dated by the Michels as required by section 561.22). For these reasons, although the required language appears in the mortgage documentation, this case for all practical purposes is one in which the required disclosure was simply not made.

up his or her right to this protection. *Red River State Bank*, 533 N.W.2d at 686. Although Red River State Bank included such a statement in the mortgage signed by the debtors, the statement was not conspicuous. *Id.* at 687. The court concluded the debtors' understanding that they were mortgaging their homestead to the bank did not relieve the bank from including a printed and conspicuous waiver clause in the mortgage itself. *Id.* at 687–88. To overlook the statutory requirements, the court reasoned, " 'would amount to saying that the Legislature performed an idle act.' " *Id.* (citation omitted).

We agree with this reasoning. To conclude there was substantial compliance with section 561.22 in the absence of the required disclosure would be tantamount to ignoring the legislature's policy decision that all mortgages on agricultural land must include the specified disclosure signed by the borrowers. *Cf. Iowa Dep't of Transp. v. Iowa Dist. Ct.*, 534 N.W.2d 457, 459 (Iowa 1995) (rejecting substantial compliance argument where its acceptance "would effectively nullify the [statutory] requirement"). Regardless of the defendants' subjective understanding of the transaction, they were statutorily entitled to the admonition required by section 561.22. *Cf. Beal Bank*, 670 N.W.2d at 124 (holding mortgage on homestead void because not signed by owner's spouse as required by statute, even though mortgage given to guarantee spouse's business debt); *Anderson v. Culbert*, 55 Iowa 233, 235, 7 N.W. 508, 508 (1880) (holding husband's conveyance of homestead in exchange for other real estate was void where wife did not sign contract, even though "she had knowledge of the trade and encouraged it"). The bank did not comply with the statute and therefore, the bank did not obtain an effective waiver of the defendants' homestead rights. Consequently, the court of appeals correctly held that the bank was not entitled to foreclose the mortgage on the Michels' homestead. *See In re Wagner*, 259 B.R. at 699 (holding waiver of homestead rights in agricultural land is only effective if the contract contains a written disclosure in compliance with section 561.22); *Red River State Bank*, 533 N.W.2d at 688 (holding bank's failure to comply with statutory requirements for homestead exemption waiver rendered bank's mortgage unenforceable); *cf. Beal Bank*, 670 N.W.2d at 124 (holding mortgage not signed by spouse as required by statute protecting spouse's homestead rights is void and mortgage cannot be foreclosed).

VI. *Propriety of Equitable Remedy.*

■ A. *Equitable mortgage.* Based on various equitable theories, the trial court and court of appeals decided that the bank was entitled to an equitable mortgage because the Michels admitted they intended to give the bank a mortgage on their homestead. These courts and the bank relied on our cases that have recognized an equitable mortgage where there was a deficiency or uncertainty in the written instrument that purported to create a security interest in the subject property. *See, e.g., Tubbs v. United Cent. Bank, N.A.*, 451 N.W.2d 177, 185 (Iowa 1990) (recognizing equitable lien on non-homestead farmland based on representations made by property owners); *Security Sav. Bank v. Colony Village Corp.*, 301 N.W.2d 702, 704 (Iowa 1981) (recognizing equitable mortgage on non-homestead property based on written instrument showing intent to use property as security for debt); *Klotz v. Klotz*, 440 N.W.2d 406, 408 (Iowa Ct.App.1989) (affirming equitable mortgage and lien on non-homestead real estate where parties' agreement showed intention to create a security interest in

property). But in none of these cases was the deficiency in the instrument purporting to create a security interest in real property a failure to comply with a statutory prerequisite. *Cf. Madrid Lumber Co. v. Boone County,* 255 Iowa 380, 385–86, 121 N.W.2d 523, 526 (1963) (distinguishing cases that permit equitable relief where there were "mere irregularities in proceedings or settlements made under valid contracts," noting case at hand involved "an oral agreement contrary to the statutory requirements").

This court has stated under other circumstances that "courts of equity are bound by statutes and follow the law in [the] absence of fraud or mistake." *Mensch v. Netty,* 408 N.W.2d 383, 386 (Iowa 1987); *accord Johnson County Sav. Bank v. City of Creston,* 212 Iowa 929, 940, 231 N.W. 705, 710 (1930) (rejecting equitable remedy where contract was unenforceable and noting " 'in the absence of fraud, accident, or mistake,' " court of equity cannot disregard statutory requirements (citation omitted)); *Brunsdon v. Brunsdon,* 199 Iowa 1099, 1113, 200 N.W. 823, 829 (1924) ("The conclusion arrived at in this case may result in a grave injustice being done to appellees, but a court of equity cannot so expand its proper jurisdiction as to completely override statutes or ignore established doctrines."); *Alvis v. Alvis,* 123 Iowa 546, 551–54, 99 N.W. 166, 168–69 (1904) (rejecting theories of constructive trust and subrogation where attempted

conveyance was held unenforceable due to failure of spouse to sign deed, as required for waiver of spouse's homestead rights, despite spouse's apparent later ratification of conveyance). This rule preserves the integrity of the legislature's judgment that certain transactions will be given effect only if they comply with the requirements set out in the statute. Granting an equitable mortgage here on the sole basis that the debtors knew they were mortgaging their homestead would render section 561.22 meaningless, and noncompliance with the statute of no moment. *See Red River State Bank,* 533 N.W.2d at 691 (rejecting bank's request for a presently enforceable equitable lien against the mortgaged homestead because it would render the statute requiring disclosure for effective waiver "meaningless in this case").[5]

■ B. *Reformation.* As noted above, the rule requiring courts to give effect to statutory requirements, whether the issue arises in law or equity, incorporates an exception for fraud or mistake. *See Mensch,* 408 N.W.2d at 386. The bank relies on the mistake exception to support its claim that its contract with the Michels should be "reformed and deemed to include the signatures of the Michels to the agricultural homestead waiver."

■ A contract may be reformed where, due to mistake, "the contract does not reflect the actual intent of the parties." *Wellman Sav. Bank v. Adams,* 454 N.W.2d

---

**5.** In *Red River State Bank,* the lender obtained a conditional equitable lien on the debtors' homestead property that was subject to the debtors' homestead exemption so long as the debtors resided on the property as a homestead. 533 N.W.2d at 686. The court believed this equitable relief was warranted because under North Dakota's anti-deficiency law the bank was forbidden from obtaining a money judgment against the debtors. *Id.* at 690. Therefore, once it was determined that the bank's mortgage was unenforceable, it

was left with no remedy. *Id.* Unlike the lender in *Red River State Bank,* the bank in the present case has not been left without a remedy since it has a personal judgment against the Michels. In any event, the bank has taken an all-or-nothing position with respect to the defendants' homestead, strenuously resisting the defendants' attempt on further review to suggest that "a remedy short of foreclosure should have been fashioned by the trial court and court of appeals."

852, 855 (Iowa 1990). While this remedy is available to change an instrument to reflect the true agreement of the parties, it may not be used to change the terms of the parties' agreement. *See Kufer v. Carson,* 230 N.W.2d 500, 503 (Iowa 1975). Furthermore, the decision to reform an instrument is within the discretion of the court, which may deny the remedy if it is inconsistent with the ends of justice. *See Id.,* at 504; accord *Wellman Sav. Bank,* 454 N.W.2d at 855.

 The bank claims "it was the intent of both parties that [the Michels'] home and [forty-seven] acre parcel be collateral for the $225,000 loaned to them." Even if this intent is equivalent to an intent by the Michels to waive their homestead exemption, we do not believe the bank is entitled to equitable relief. The law requires that the bank disclose to the Michels in a conspicuous manner the effect of their waiver of homestead rights. *See* Iowa Code § 561.22. The purpose behind this disclosure is to ensure the debtors truly comprehend what they are doing and consider the effect of the waiver in deciding whether to enter into the transaction. Here the disclosure was not given due to the bank's determination that the statutory requirement was inapplicable and, as a consequence, the Michels were deprived of the beneficent effect of the statutory admonition. As a consequence, their intent to mortgage their property was formed without the benefit of the required disclosure. We think reformation to reflect "the true agreement of the parties" would be inappropriate under these circumstances because the statutory requirement that was ignored could have potentially affected the debtors' decision to agree to the terms of the mortgage. Therefore, we choose not to exercise our discretion to reform the mortgage instrument.

C. *Waiver/estoppel.* The bank alleges a misrepresentation by the Michels to support its theories of waiver and estoppel. It claims "the Michels represented that they were not engaged in any agricultural activities when they provided their tax returns and other documentation showing no such activities." Assuming for purposes of our discussion only that proof of waiver or estoppel would warrant equitable relief despite the bank's noncompliance with statutory requirements for a mortgage on homestead property, we do not think the bank has proven these theories. As for the bank's waiver argument, there is no connection between the Michels' income tax returns and whether they knew of and intentionally relinquished their right to the agricultural homestead disclosure. *See generally Huisman v. Miedema,* 644 N.W.2d 321, 324 (Iowa 2002) ("'waiver is an intentional relinquishment of a known right'" (citation omitted)). With respect to the equitable estoppel theory, the bank has not shown it was justified in relying on the alleged "representation" in deciding whether it needed to make the disclosure required for agricultural land. *See generally Iowa–Ill. Gas & Elec. Co. v. Iowa State Commerce Comm'n,* 412 N.W.2d 600, 606 (Iowa 1987) ("to establish an estoppel claim a party must demonstrate reasonable reliance upon an adversary's conduct"). As we explained earlier, the necessity of having the debtors sign a section 561.22 disclosure depends not on whether the debtors are actively engaged in farming, but on whether the mortgaged property is suitable for farming. Thus, the bank is not entitled to equitable relief based on the alleged "misrepresentation" arising from the defendants' production of their tax returns.

■ D. *Specific performance.* The bank also seeks specific performance, asserting the Michels should be required to

execute proper documents granting the bank an enforceable mortgage. It relies on our decision in *Quint-Cities Petroleum Co. v. Maas*, 259 Iowa 122, 143 N.W.2d 345 (1966), in which we required debtors to execute an assignment that was to serve as security for a loan on their homestead. In that case, the debtors refused to execute and deliver the agreed-upon assignment and this court affirmed the district court's judgment granting specific performance. *Quint-Cities Petroleum*, 259 Iowa at 127, 131, 143 N.W.2d at 348, 350. In contrast, in the present case, the Michels executed the very documents proffered by the bank. Thus, the bank has already received the performance it requested of the defendants.

Moreover, to require the Michels to execute a different set of papers would improperly disregard the bank's failure to comply with statutory requirements in obtaining its mortgage on the Michels' homestead. As we have already discussed, the agricultural homestead disclosure required by section 561.22 was intended to alert potential mortgagees to the effect of their waiver of homestead rights before execution of the mortgage documents so they would think twice before mortgaging their homestead. To require an after-the-fact execution of the disclosure would totally defeat the purpose of this statute.

E. *Constructive trust.* Finally, we address the bank's misplaced reliance on *Cox v. Waudby*, 433 N.W.2d 716 (Iowa 1988) and similar cases to support its claim that it should have an equitable lien on the Michels' property based on a constructive trust theory. In *Cox*, the owners of the homestead property at issue had purchased the property with the proceeds of a fraudulent transaction. 433 N.W.2d at 718. The property owners sought to preclude the defrauded party from tracing the proceeds of the fraud to the property in question, arguing the property was protected by the homestead exemption. *Id.* This court held that while "homestead property is ordinarily immune from ... judgment liens," the defrauded party in that case had an "interest in the property ... greater than that of an ordinary judgment lien." *Id.* Because the defrauded party had a constructive trust in the proceeds of the fraudulent transaction, it could reach whatever had been obtained through the use of those proceeds, including homestead property purchased with the tainted funds. *Id.* The *Cox* case is clearly distinguishable from the present situation, where the bank did not have a constructive trust on the proceeds used to purchase the property it seeks to reach and has otherwise made no showing of fraud on the part of the Michels.[6] Therefore, the bank is not entitled to equitable relief based on a theory of constructive trust.

VII. *Attorney Fee Award.*

 After the Michels filed their notice of appeal from the district court's judg-

---

**6.** The bank contends a constructive trust may be imposed in the absence of fraud. See, e.g., *Loschen v. Clark*, 256 Iowa 413, 419-20, 424, 127 N.W.2d 600, 603-04, 605 (1964) (imposing constructive trust on farm in favor of plaintiff who had provided purchase money to daughter and son-in-law in exchange for support agreement because it was "the only manner in which plaintiff [could] secure proper and practical relief"); *Pap v. Pap*, 247 Iowa 371, 381, 73 N.W.2d 742, 747-48 (1955) (holding an implied trust was "deducible from the nature of the transaction as matters of [the parties'] intent"). Although this statement is true as a general proposition, we have found no case in which the court has imposed a constructive trust to protect a creditor that has failed to comply with a statutory prerequisite in extending credit. As noted previously, a creditor is bound by statutory requirements in the absence of fraud or mistake.

ment of foreclosure, the district court entered an order granting the bank's post-judgment motion to tax attorney fees. The defendants did not separately appeal this order. The bank claims that, as a consequence, the Michels are precluded from challenging the attorney fee award in this case.

Although the filing of a notice of appeal generally deprives the district court of jurisdiction, the court "retains jurisdiction to proceed as to issues collateral to and not affecting the subject matter of the appeal." *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990). The issue of attorney fees is such a collateral matter. *Id.*

In considering the appeal of post-appeal rulings on collateral issues, we have held such rulings "are separately appealable as final judgments." *State v. Formaro*, 638 N.W.2d 720, 727 (Iowa 2002). In *Formaro*, the defendant attempted to challenge the district court's ruling on the issue of bail following entry of judgment and sentence and the defendant's perfection of his appeal from the original judgment. *Id.* at 724. We held the defendant could not rely on the notice of appeal he had filed from the district court's judgment and sentence to obtain review of the court's bail ruling. *Id.* at 727. Because the defendant did not file a separate notice of appeal from the court's post-appeal ruling on the collateral issue of bond, we held that issue was not before the court on appeal. *Id.*

The same conclusion is required here. Because the matter of attorney fees is a collateral issue and was decided after the defendants had appealed the court's ruling on the merits of the lawsuit, the defendants were required to separately appeal the award of attorney fees to bring that matter before us for review. Since the Michels failed to do so, we may not consider the district court's attorney fee award on appeal.

VIII. *Summary and Disposition.*

The bank may not rely on the supersedeas bond secured by the Michels' homestead to satisfy the personal judgment rendered against the defendants. The defendants did not appeal the personal judgment and therefore the bond does not guarantee payment of that judgment. Accordingly, the bank is not able to reach the homestead except to the extent the trial court's judgment allowing foreclosure of the bank's mortgage on this property is affirmed. Consequently, this appeal is not moot.

The defendants' property is agricultural land because it is suitable for use in farming. Therefore, in order to obtain a valid waiver of the defendants' homestead rights, the bank was required to comply with section 561.22. Not only did the bank fail to obtain the required signed statement, it did not substantially comply with section 561.22 by merely advising the Michels that they could lose their home if they defaulted on their loan. In addition, the defendants' subjective understanding that they were mortgaging their home did not dispense with the necessity of giving the required admonition. Because the bank failed to comply with section 561.22, the defendants' waiver of the homestead exemption is unenforceable. The district court erred in ordering foreclosure of the bank's mortgage insofar as the forty-acre homestead is concerned.

The bank is not entitled to an equitable mortgage under any of the theories asserted. When the only factual basis for equitable relief is the understanding of the debtors that they are mortgaging their home, recognition of an equitable mortgage would render section 561.22 a nullity. Because the statutory disclosure omitted

in this case is intended to impact a debtor's decision to mortgage the debtor's homestead, we decline to exercise our discretion to reform the parties' written agreement. For the same reason, the remedy of specific performance would be inappropriate. We also reject the bank's claim that it justifiably relied on the defendants' tax returns showing no farming activity in deciding not to require execution of the disclosure required by section 561.22. The requirement of that statute is triggered by the suitability of the land for farming, not the farming activities of the debtors. Finally, we find no basis to award equitable relief on the theories of waiver, estoppel, or constructive trust.

The defendants failed to file a separate notice of appeal from the district court's post-judgment and post-appeal ruling on the bank's motion for attorney fees. Therefore, that issue is not before us.

As noted earlier, the trial court ruled that only forty of the defendants' forty-seven acres are exempt as their homestead, *see* Iowa Code § 561.2, a ruling not challenged by the defendants on appeal. It appears from the record that the Michels have not platted or selected the precise boundaries of their homestead, as permitted by Iowa Code section 561.4. Therefore, the case must be remanded to the district court for further proceedings. *See* Iowa Code § 561.6 (permitting district court, upon application of any creditor or other interested person, to fix and establish the boundaries of a homestead).

In conclusion, we vacate the decision of the court of appeals, affirm the judgment of the district court to the extent it ordered foreclosure on seven acres of the defendants' property, and reverse the district court's judgment of foreclosure as to the defendants' forty-acre homestead. This case is remanded for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**