# IN THE COURT OF APPEALS OF IOWA

No. 24-0734
Filed June 18, 2025

**BRIAN CRAIG THORN,**
　　　Plaintiff-Appellant,

**vs.**

**HEATHER LYNN WEBER,**
　　　Defendant-Appellee.
_____

　　　Appeal from the Iowa District Court for Delaware County, Monica Zrinyi Ackley, Judge.

　　　A former spouse appeals an order following trial on a petition for modification of a dissolution decree. **AFFIRMED.**

　　　Jeremy B. Hahn (argued) of Roberts & Eddy, P.C., Independence, for appellant.

　　　Andrew B. Howie (argued) of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

　　　Heard at oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

Brian Thorn appeals an order modifying the child support provision of the decree dissolving his marriage to Heather Weber, claiming the district court erred in calculating his income. He also challenges the court's failure to increase his visitation, challenges the court's orders relating to the guardian ad litem, and contests the award of trial attorney fees. Upon our review, we affirm the district court's modification order. We decline to award appellate attorney fees to either party.

## I.        Background Facts and Proceedings

Brian and Heather married in 2014. Their child, V.T., was born in 2016. A few weeks after V.T. was born, the parties separated. Heather obtained a domestic abuse protection order,[1] and V.T. was placed with her. She petitioned for dissolution of marriage soon after. In 2018, the district court entered a dissolution decree placing V.T. in Heather's sole legal custody with "gradual or 'stair-step' increase in visitation" to Brian, based in part on the findings below:

> (1) There is in this matter a history of physical and verbal abuse.
> (2) The parties clearly have shown an inability to communicate constructively with each other regarding the child's needs, and the Court is concerned that granting at the present time equal rights and responsibilities to participate in decisions affecting the child's legal status, medical care, education, and other situations is likely to impede future necessary and appropriate decision-making related to such matters.
> (3) [Brian] did not substantially participate in the proceedings in this matter until trial, despite knowing that such proceedings would determine issues including legal custody, primary care and visitation involving his minor child.
> (4) [Heather] has provided the vast majority of the primary care for the child during the child's young life, and there is insufficient

---

[1] Brian consented to the order.

evidence that both parties have actively cared for the child since the date of separation and that each party has supported the other's relationship with the child.

(5) Considerations of stability and continuity of care favor continuing primary care and custody of the child[] with [Heather].

The court noted, however, that Brian "has made huge strides in recovery from his alcohol dependence" and surmised that if his progress continued and he was able to meet the obligations of a joint legal custodian, he "may seek modification of this order."

In 2020, Brian petitioned to modify the legal custody terms of the decree. Following trial in 2021, the district court entered a modification order. The court awarded the parties joint legal custody of V.T. But the court declined Brian's request for shared physical care, reasoning in part:

First, the parties do not communicate particularly well. Second, the Court has taken into consideration the history of discord and domestic abuse between the parties. Third, and most importantly, the Court is not convinced that that request would be in the best interest of the child. The child has thrived under the physical care arrangement currently in place.

The court ordered Brian to have visitation every other weekend from 5:00 p.m. Friday to Monday morning and every Wednesday from 4:00 p.m. to 7:00 p.m. Brian's child support obligation was $150 per month.[2]

In 2023, Heather petitioned to modify Brian's child support obligation. Brian counter-claimed, requesting shared physical care of V.T. The court granted the parties' joint application for the appointment of a guardian ad litem (GAL) for V.T. The matter proceeded to trial in February 2024. On the morning of the trial, Brian's

---

[2] The dissolution decree ordered Brian to pay child support in the amount of $517.58. At some later point, his obligation was lowered to $150. The order reducing Brian's child support is not part of the record on appeal.

attorney informed the court that Brian was "no longer seeking shared care but we are still seeking a modification of the custodial order with primary care being placed with [Heather] but seeking for additional visitation time." The parties agreed Brian's income had increased such that a modification of child support was justified, but they disagreed on the amount of his income. So the issues before the court related to whether a material change of circumstances warranted modification of Brian's visitation and what amount of child support Brian should be ordered to pay.

Ultimately, the court determined Brian had not shown a "change in circumstance to warrant a modification of visitation under the lessened burden for a change in visitation" and V.T.'s "best interest, which is the primary concern for the Court, is not served by expanding visitation based on the record." The court ordered Brian to pay $670 per month in child support, retroactive to October 1, 2023.

Brian appeals. Additional facts will be set forth below as relevant to the issues raised on appeal.

## II. Standard of Review

An action to modify a decree of dissolution of marriage is an equitable proceeding, which we review de novo. Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). The best interest of the child is our primary consideration. Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

### III.    Guardian ad Litem Fees

Brian challenges the court's failure to follow the "agreement of the parties and . . . a preexisting order of the court" that the parties would split the GAL fees. Heather argues we lack jurisdiction to consider Brian's claim because he "never appealed that order." We agree.

The district court's modification order was filed on April 5, 2024. Brian filed his notice of appeal on May 1. On June 5, the district court directed counsel to "provide notice as to any dispute regarding the amount [of fees submitted by the GAL] and which party they assert should be responsible for the fees." Heather filed her response on June 14, Brian filed his response on June 17, and the court entered its order on July 11. Brian did not separately appeal that order.

"In considering the appeal of post-appeal rulings on collateral issues, we have held such rulings 'are separately appealable as final judgments.'" *Iowa State Bank & Tr. Co. v. Michel*, 683 N.W.2d 95, 110 (Iowa 2004) (quoting *State v. Formaro*, 638 N.W.2d 720, 727 (Iowa 2002)). Because the matter of GAL fees is a collateral issue that was decided after Brian had appealed the court's ruling on the merits of the modification action, Brian was required to separately appeal the order setting GAL fees to bring that matter before us for review. *See id.*; *Formaro*, 638 N.W.2d at 724, 727 (holding a "post-appeal ruling on the collateral issue of bond" was not properly before the court on appeal because the defendant "did not file a separate notice of appeal" and he "could not rely on the notice of appeal he had filed from the district court's judgment and sentence to obtain review of the court's bail ruling"); *Schwickerath v. Anderson*, No. 21-1465, 2022 WL 17481857,

at *10 (Iowa Ct. App. Dec. 7, 2022) (same). As Brian failed to appeal the subsequent order, we do not consider his claim on appeal.

## IV. Guardian ad Litem Evidence

Brian next challenges the court's "evidentiary ruling by not allowing closing arguments and . . . the guardian ad litem to state a position." Brian argues the GAL was not able to be heard "in any sort of formal setting" because the parties did not make closing arguments.

Prior to trial, the GAL met with the parties and the child, exchanged emails and phone calls with interested persons, reviewed and drafted pleadings, and "drafted [a] report and sent [it] to counsel." According to Brian, the GAL "made a recommendation to counsel and the parties via email." The GAL's report was not filed with the court and does not appear in the record.

At the outset of trial, the parties provided the court with their positions relating to visitation. Brian requested "a 2-2-3 [schedule] that results in him having 6 and [Heather] having 8 overnights." Heather requested that Brian receive no additional visitation. The GAL provided the following position:

> [T]his morning is when I was notified [Brian and his attorney] were not—they were no longer asking for shared care, Your Honor. My position, and in the child's best interest, is I do think it would be appropriate for primary care to remain with [Heather], and for [Brian's] visitation to be increased. Trying to kind of figure out exactly the schedule that [Brian's attorney] just laid out, I don't know if that substantial increase is appropriate, given the relationship between the parties, but I certainly think the more that we can eliminate the child going to and from houses between parents and try to use the schools makes more sense. So whether, I guess, I would tell the Court like on Wednesdays, he has a Wednesday visit, and then at the end of that visit, he returns to [Heather's] home, I think it would be appropriate for the child to be taken to school the next morning by [Brian] to avoid that additional exchange between the parents.

Preliminarily, contrary to Brian's claim, we observe the GAL *did* state her position and "offer proposed or requested relief." *See* Iowa Code § 598.12(1)(a)(6) (2023). And to the extent that Brian challenges the court's failure to allow closing statements, Brian did not raise that issue before the district court. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). We decline to address this claim further.

## V.    Modification of Child Support

Heather requested a modification of Brian's child support obligation based on an increase in Brian's income. Although the parties disputed the amount of Brian's income,[3] under either party's calculation, they agreed a substantial change of circumstances existed to modify his child support obligation. *See* Iowa Code § 598.21C(2)(a) ("[A] substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines.").

The district court determined that for child support purposes, Heather's income was $106,000 and Brian's income was $68,000.[4] Using those numbers, the court ordered Brian to pay child support in the amount of $670 per month. Brian claims the court "erred by inaccurately calculating [his] child support, specifically by imputing incredibly high income to him which was not supported by

---

[3] The parties agreed on Heather's income.

[4] Although the court's order found Brian's income to be $68,905, the child support guidelines worksheet the court attached to the order listed his income at $68,000.

the record or evidence." Brian maintains the court failed to account for "legitimate business expenses and deductions" available to Brian or the fact that "he was paid off commissions, so his income was not the same each month."

In considering a party's income, the court must consider all circumstances relating to that party's income. *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). For instance, if a party's income is subject to substantial fluctuations, an average of that income over several years may be appropriate. *Id.* As a whole, however, the parties' income must be determined from the most reliable evidence presented. *Id.*; *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999) ("In calculating child support, the first step is to determine the parents' current monthly net income from the most reliable evidence presented.").

Brian testified that in April 2023, he began working as an independent contractor for Ashley Furniture. Brian did not provide a W-2 or 1099 given the timing of the trial. But he also did not furnish receipts or other documentation for any alleged expenses. Instead, he created an income and expense tracker, admitted into the record as "Exhibit S," which set forth his earnings and expenses from April to December 2023. Brian explained that Exhibit S listed "a flat number" he had been paid each check from April 18 through the end of the year, totaling $58,060.[5] The exhibit also listed $13,333.72 in work-related expenses. Brian's listed expenses included vehicle expenses, gas, insurance, meals, clothing, travel, and his phone bill. Brian testified that "going forward" he hoped to "go on

---

[5] Brian's paychecks started at $3000. From September forward, his paychecks were $3334, except for one check for $3834 in mid-December that included an extra $500 for a Christmas bonus.

commission"; "Hopefully, in two to three years, I'll have a senior level position, so—although it's not a six-figure job right now, it could eventually be that . . . ."  Yet, Brian believed his child support should be based on income of around $48,000.

But Brian's math does not line up with Exhibit S, which he provided as evidence of his income.[6]  It also ignores the increase in income that Brian predicted will follow his transition to commission-based pay, *see In re Marriage of Bainbridge*, No. 22-1299, 2023 WL 2908648, at *3 (Iowa Ct. App. Apr. 12, 2023) ("This argument also ignores Troy's yearly fluctuations in income.  Even if we were inclined toward this claim, Troy's math does not account for the drastic increase in his income after the three-year period ends."), and the set-off for expenses that Brian pays because of his self-employment, *see In re Marriage of McKamey*, 522 N.W.2d 95, 99 (Iowa Ct. App. 1994) (concluding that district court properly increased self-employed husband's income by amounts used for personal use but claimed as business expenses).

We recognize that determining income for self-employed individuals may be difficult.  And we recognize in cases involving custody and visitation, it is sometimes necessary in the time restraints at trial for counsel to devote less time to making a record on financial issues and more time on issues concerning custody and visitation.  Here, very little of the trial testimony concerns Brian's income.  To complicate matters, his job description and income were fluid at the time of trial,

---

[6] In general, the best evidence of income comes from completed income tax returns.  *See In re Marriage of Hansen*, 886 N.W.2d 868, 876 (Iowa Ct. App. 2016).  Brian testified he had not received tax information yet, but he would soon.  The district court observed, "The Court did not receive any tax filings and therefore had nothing with which to verify any schedule C deductions."

with Brian beginning a new position with the company within a day of the start of trial. As to his expenses, Brian's testimony supports the fact that he included personal expenses in his business expenses.[7] He also acknowledged that going forward he would be receiving commissions, unlike in his previous work for the company.

In some cases, it is appropriate to increase income by the amounts a court determines were taken from the business for personal use but claimed as expenses. *See id.* at 98–99. Other than the self-generated spreadsheet, Brian presented no evidence to support the claimed expenses. Under this record, we decline to disturb the district court's determination of Brian's income for child support purposes.

## VI. Failure to Modify Visitation

"Upon awarding one parent physical care, the district court shall award the other parent visitation that assures the child[] 'the opportunity for the maximum continuing physical and emotional contact with both parents.'" *In re Marriage of Gensley*, 777 N.W.2d 705, 717 (Iowa Ct. App. 2009) (quoting Iowa Code § 598.41(1)(a)). Brian challenges the court's failure to modify his visitation. Although Brian points to the legal standard for modification of physical care, we address his claim under the "less demanding burden of proof to modifications of visitation." *In re Marriage of Brown*, 778 N.W.2d 47, 52 (Iowa Ct. App. 2009). In this case, Brian, as the "parent seeking to modify visitation," need only show there

---

[7] As examples, Brian included the full premium of his car insurance in his expenses, though the car also served as a personal vehicle, that he deducted his full gas expenses if he drove his car for work the day he filled up, and he wrote off his entire phone bill as a business expense.

has been a material change in circumstances since the most recent order. *Id.* at 51–52. Brian also bears the burden of showing that the requested change is in the child's best interests. *Id.*; *see also In re Marriage of Salmon*, 519 N.W.2d 94, 96 (Iowa Ct. App. 1994).

At trial, Brian requested a change to the visitation schedule that would provide him nearly the same number of overnights as Heather. On appeal, he reiterates that request or, alternatively, he requests the visitation schedule recommended by the GAL—a modification that would allow him an overnight on Wednesdays rather than a three-hour evening visit on those days.[8] To support his claim, Brian challenges the district court's reliance on testimony relating to the child's mental health, and he claims the court disregarded his testimony, his fiancé's testimony, "and all other parties who expressed that the child should have more time with [Brian] if desired."

A fundamental problem with Brian's claim, however, is the record shows the child did not want additional time with him. Indeed, the child has struggled with the time he has spent in Brian's care since the initial modification. And we are not persuaded by Brian's dismissal of the child's mental-health concerns, as such issue is central to determining the child's best interests. *See, e.g.*, *In re Marriage of Hansen*, 733 N.W.2d 683, 696–97 (Iowa 2007) (recognizing that removing a child from their primary caregiver can cause instability, damaging their emotional well-being); *In re Marriage of Lydolf*, No. 20-0679, 2021 WL 2453050, at *4 (Iowa

---

[8] To be clear, we observe the GAL opined the "substantial increase" requested by Brian was not "appropriate, given the relationship between the parties."

Ct. App. June 16, 2021) ("[K]eeping [children] close to their primary caregiver is the 'least disruptive emotionally' to the children." (citation omitted)).

In addressing Brian's request for modification of visitation, the district court stated:

> The Court finds that there is no substantial change in circumstance to warrant a modification of visitation under the lessened burden for a change in visitation. The child's best interest, which is the primary concern for the Court, is not served by expanding visitation based on the record. Both the Court that entered the decree and the Court that entered the modified custodial order noted that the best interest of child would not be served by granting extensive co-parenting requirements to the parents. The conflict between the parents has not lessened or subsided since the entry of the decree or the modification; it has heightened. The parents cannot co-parent and to make them do more with the child going back and forth more would be detrimental to the minor.
>
> The child is suffering from stress and exhibits anxiety. He has indicated to counselors that he "feels down a lot." He has a diagnosis of generalized anxiety disorder and major depressive disorder, mild. The child is being instructed on coping mechanisms to deal with issues that present when he has to attend functions where is father is and when he is at his father's home.
>
> The child likes to be with his grandfather. This appears as a neutral setting for him without high expectations and stress. Grandpa lets the child talk and focuses on him. He testified with conviction and compassion that he is worried about the child. He stated, "You cannot make people get along but when you are in his sight put differences aside."
>
> The child has cried uncontrollably in the presence of his aunt and references the bad things his dad says about his mom. He has indicated he prefers to stay in his room at dad's and does not like summertime as it is too much time at his father's.
>
> From the time of his birth in 2016 to 2021, he was in the sole care of his mother. All of his formative years were without a tug-of-war between the parties. It stands to reason he is suffering separation anxiety because of the circumstances presently. It also stands to reason that he is upset when his father talks badly about the people he loves like his mother and his grandpa. Brian does not appear to be able to pick up on the child's cues. Brian is focused on his desires and not the child's, e.g. attending wrestling when the child has asked that he not; desire to be involved in counseling when this is intended to provide the child with control and education for his issues.

The Court gives no credibility to the assertion that Heather having a new baby warrants a modification. The Court gives no credibility to the assertion that Heather is residing with a short-term boyfriend. The Court gives credibility to the assertion that the child's emotional needs are of a concern, but not from the relationship he has with his mother; therefore, the assertion does not support a modification as requested by Brian. If Heather would have prayed for a change in visitation, the Court would have discontinued the over nights on Sunday and required that the child be returned to his mother so he could emotionally adjust before starting school on Monday morning. This the Court finds would serve the best interests of the child.

(Internal footnote omitted.)

"Because [the] trial court was present to listen and observe the witnesses, we give weight to its findings." *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). "In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented." *Potter v. Smith*, No. 19-0991, 2019 WL 6894285, at *5 (Iowa Ct. App. Dec. 18, 2019). The trial court has reasonable discretion to modify visitation rights, and we will not disturb its decision on appeal unless the record fairly shows that it has failed to do equity. *Norenberg v. Norenberg*, 168 N.W.2d 794, 797 (Iowa 1969); *In re Richardson*, No. 12-1461, 2013 WL 3458166, at *2 (Iowa Ct. App. July 10, 2013).

Upon our de novo review of the record, we concur with the court's conclusion that Brian has not met his burden for a change in visitation. We affirm on this issue.

## VII.    Trial Attorney Fees

In the modification order entered on April 5, the district court referenced section 598.36 and granted attorney fees to Heather, but it did not determine a set

amount. *See* Iowa Code § 598.36 (permitting an award of trial attorney fees for the "prevailing party" of a modification action). Instead, the court directed Heather to submit an affidavit of those fees within ten days "[i]f a request is to be made." Heather's attorney submitted an affidavit, and on August 15, the court entered an order awarding Heather attorney fees in the amount of $6180. On appeal, Brian challenges the court's award of trial attorney fees to Heather.

As noted above, Brian filed his notice of appeal on May 1. Therefore, although the district court retained jurisdiction to consider Heather's application for attorney fees, Brian was required to separately appeal the award of attorney fees and move to consolidate the two appeals to bring that matter before us. *See* Iowa R. App. P. 6.103(3). "[B]ecause [Brian] failed to file a secondary appeal or request the two appeals be consolidated, we cannot consider his challenge." *In re Marriage of Kisting*, 6 N.W.3d 326, 337–38 (Iowa Ct. App. 2024).

## VIII. Appellate Attorney Fees

Both parties request an award of appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018) (citation omitted). In considering whether to award such fees we consider the needs of the party seeking the award, the financial ability of the other party to pay, and the merits of the appeal. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).

Heather has filed an affidavit listing appellate attorney fees of $13,480. Brian's briefing requests an award of $10,000 in appellate attorney fees. While Heather has been successful in this appeal, the disparity in the parties' incomes is also relevant to our decision. A party's ability to pay their own fees is a

consideration. *In re Marriage of Lalone*, 469 N.W.2d 695, 698 (Iowa 1991). In light of the parties' relative incomes, we determine Heather has the ability to pay her own attorney fees. And because Brian did not prevail on appeal, we deny his request. Each party shall be responsible for their own appellate attorney fees.

## IX.     Conclusion

Having addressed the issues properly raised on appeal, we affirm the district court's modification order. We decline to award appellate attorney fees. Costs on appeal are taxed to Brian.

**AFFIRMED.**