Mary. F. McClelland et al., Appellants, v. John S. Saul, et al., Defendants. Barnhart Bros. & Spindler, Appellees.

Landlord's Lien: CHATTEL MORTGAGES: *Notice to landlord.* In an action for rent, in which a landlord's attachment was levied on a printing press, a mortgagee of the press claimed a superior lien under a chattel mortgage executed prior to delivery to the tenant, but not recorded till after such delivery. *Held,* that the fact that the acknowledgment of such chattel mortgage was taken before one of the agents of the landlord, who had charge of the management of the leased premises, and who had other knowledge of the mortgage, was sufficient to charge the landlord with notice of the mortgage.

Review on Appeal: ASSIGNMENT OF ERRORS: *Transfer to equity docket made in law action.* Where plaintiffs in an action for rent, in which they ask for equitable relief to which defendants pleaded a chattel mortgage as a superior lien, failed to assign error on an order transferring a case to the equity docket, they cannot review the order on appeal.

*Appeal from Cedar Rapids Superior Court.*—Hon. Thomas M. Giberson, Judge.

Thursday, January 31, 1901.

The plaintiffs brought this action to recover rent due. A landlord's writ of attachment was levied on the property in controversy, upon which the appellees had a mortgage for the purchase price, which they claim is superior to the lien of the landlord. On motion the case was transferred to

the equity side of the calendar.  There was a trial on the merits, and a judgment for the appellees.  The plaintiffs appeal.—*Affirmed.*

*Deacon & Good* for appellants.

*U. C. Blake* and *John M. Redmond* for appellees.

Sherwin, J.—The property involved in this case is a printing press and folder which were sold by appellees to the appellants' tenant.  There is a conflict in the evidence as to just when the property was placed in the building, but we think it fairly appears that there was a completed delivery of the press and folder late on the nineteenth day of August, 1897.  The mortgage under which appellees claim bears the date of August 14, 1897.  It was acknowledged August 19th, and recorded the next day. The acknowledgement of the mortgage was taken by Mr. Good, of the firm of Deacon & Good, attorneys for the appellants herein.  It is apparent that, if the appellants had no actual notice of the mortgage to the appellees, their lien as landlords would be superior to that of the mortgagees, because the tenant had acquired title to the property before the recording of the mortgage would convey constructive notice to them.  But the record before us conclusively shows that Deacon & Good were the agents of the plaintiffs for the leasing and management of the property occupied by the tenant in question, which property belonged to an estate in which the plaintiffs were all interested.  That the mortgage was executed and acknowledged before the title passed to the tenant, we do not doubt.  Mr. Good, one of plaintiffs' agents, took the acknowledgment, and had actual knowledge of the existence of the mortgage.  Was this sufficient notice to his principal?  We think it was.  It is an elementary principle that notice to an agent, while acting within the

scope of his authority, and relating to matters over which his authority extends, is notice to his principal. But it is contended that it was not sufficient in this case, because it was not acquired by the agent after he was called upon to act in the matter by the principal. This position, however, is not well taken. At the very time this information was received by him he was one of the agents looking after the entire interest of all the plantiffs in the property in question. Whatever notice he had at the time was full and complete notice to his principals, whether he was called upon to act thereon or not. The weight of authority seems now to favor the rule that knowledge acquired before the agency exists shall be imputed to the principal, and it will be presumed that the agent retains the knowledge for a reasonable time. Mechem, Agency, section 721; and cases cited; *The Distiled Spirits,* 11 Wall. 367 (20 L. Ed. 167); *Wilson v. Association,* 36 Minn. 112 (30 N. W. Rep. 401, 1 Am. St. Rep. 659); *Yerger v. Barz,* 56 Iowa, 77. There is nothing in this case tending even to indicate that Mr. Good did not at all times have the matter fully in mind. We are of opinion, therefore, that the appellants had knowledge of the mortgage to appellees, and that their lien is inferior to the mortgage. The action, as originally begun, was in law to recover rent only. An amendment was filed asking a writ of injunction, and praying for such other equitable relief as might seem just to the chancellor. The appellees answered, setting up their mortgage, and alleging a superior lien. After the issues were joined, they moved to transfer to the equity docket, which was done, and it was there tried; and complaint is made of the order of transfer.

2        If it be conceded for present purposes that the plaintiffs might pray for general equitable relief, and, upon the defendants pleading superiority of lien, and moving to try the case in equity, object thereto, they are in no position to urge such claim now. If the action was still in law before its transfer to the equity calendar, the order of

transfer was in the law action, and, to entitle the appellants to a review of the ruling thereon, error should have been assigned. *Powers v. O'Brien County,* 54 Iowa, 501; *Patterson v. Jack,* 59 Iowa, 632.    The judgment is AFFIRMED.

---

## L. B. MILLER v. THE CONSOLIDATED PATRONS AND FARMERS MUTUAL INSURANCE COMPANY, Appellant.

**Insurance:** IMPLIED PROMISE TO PAY AMOUNT RETURNED BY ADJUSTER. The charter of a mutual fire insurance company provided that the director from each township should be the adjuster of losses in. that township, and the directors, after an investigation of the facts nad efforts to settle plaintiff's loss, passed a motion that the settlement be left to D., the director from plaintiff's township. D. returned the amount of loss on a blank furnished by the company and recommended payment. In an action for such amount; the company moved for a verdict on the ground that no agreement to pay was established, and refused to introduce evidence. *Held,* that the direction of a verdict for plaintiff was proper, since the evidence was sufficient to show an implied promise to pay the amount returned by the adjuster.

ADJUSTERS: *Limitation of general power.* Where the charter of a mutual fire insurance company provided that the director in each township should adjust the losses in that township, the fact that the adjuster's report was made on a blank furnished by the company, which merely recommended payment of a certain amount, which the insured agreed to and that the charter declared that the adjuster should be guided by such regulations as the company and its directors should establish, was not sufficient to show a limitation on the general powers of the adjuster to bind the company to pay the amount agreed on by him and the insured

AUTHORITY TO BIND INSURED BY AGREEMENT AS TO AMOUNT OF LOSS: *Evidence.* Where, after futile efforts had been made by a muual fire insurance company to settle plaintiff's loss, the directors passed a motion, that the settlement be left to D., the company's director from plaintiff's township, D. had power to bind the company by an agreement as to the amount of loss sustained.

*Appeal from Buchanan District Court.*—HON. F. C. PLATT, Judge.

THURSDAY, JANUARY 31, 1901.

PLAINTIFF held a policy of insurance in defendant company on certain buildings, together with personal property. He suffered a loos by fire and bdings this action to recover the amount thereof. After plaintiff's evidence was all in, defendant asked and was refused a verdict in its favor. Upon defendant then declining to introduce any testimony, the court instructed the jury to return a verdict in plaintiff's favor for $2,508, which was accordingly done. From a judgment rendered on such verdict, defendant appeals.—*Affirmed.*

*E. E. Hasner* for appellant.

*Lake & Harmon* and *J. E. Jewel* for appellee.

WATERMAN, J.—A number of defenses are set up in the answer, which are not touched upon in argument by appellant, who insists that this action is not upon the policy, but upon an agreement of settlement, and that no such agreement is established by the testimony. We should not be inclined to give the case this construction, but, as both parties argue the case on this theory, we shall follow them in our discussion of the questions presented. Defendant, as its name indicates, is a mutual company, and is conducted on the assessment plan. It issues policies only to its members. Its articles of incorporation and by-laws, to some of which we shall have to give our attention later on, were indorsed, as was its custom, on the policy. The facts which we have to consider may be briefly stated: Plaintiff's loss occurred October 19, 1897. Notice of such loss was given the secretary of defendant company on the day following, and, on

the same day such notice was given, the secretary, with an adjuster came to plaintiff's place to investigate the loss. They invoiced the personal property destroyed, and took dimensions of buildings. Nothing, however, was afterwards done in the way of paying the loss, although plaintiff called more than once about it at the company's office. It seems the directors were not willing to allow as much as plaintiff claimed. With matters in this situation, on January 3, 1898, the following proceedings were had at a meeting of the directors: "Loss of L. B. Miller was presented to the board for action by Mr. Diehl. Motion was that the matter of settlement be left in the hands of John A. Diehl to settle. Motion carried." Under the articles of incorporation the director named in each township was the adjuster in such district, and John A. Diehl was the director in the township where the loss occurred. On January 6, 1898, Diehl made the following report to the company: "To the Consolidated Patrons' and Farmers' Mutual Insurance Company of Buchanan County, Iowa: The undersigned, adjuster for Washington township, in said county, begs leave to report the loss of L. B. Miller, of said township, and after careful examination of all the facts coming under our notice find his loss to be $2,508, destroyed by fire on the 19th day of October, 1897, and recommend the same to be paid. Our fees for service are $1.50. Respectfully submitted, John A. Diehl, Adjuster. Dater this 6th day of January, 1898." The amount was assented to by plaintiff. This report is upon a printed blank furnished by the company, the only writing therein being the name of the township, the name of the assured, the amount of the loss, the dates and signatures. The company, however, refused to allow the amount named. At one time they offered plaintiff the sum of $2,100, which he refused. On May 9, 1898, this action was brought. These are the facts, but before taking up for consideration the conclusions of law to be drawn therefrom, it may be well to inquire as to the general

power of an adjuster with relation to binding the company by his allowance of a loss. The reasoning of the parties will be better understood if this general principle of law is first settled. In *Ruthven v. Insurance Co.*, 102 Iowa, 550, where the authority of an adjuster to bind his company was in question, Robinson, J., speaking for the court, said: "If he investigates a loss, and agrees with the assured as to its amount, the rights of the parties are thereby determined. * * * To adjust an unliquidated claim is to determine what is due; to settle; to ascertain. * * * Or, as defined in Webster's Dictionary, it is to settle, or bring to a satisfactory state, so that parties are agreed in the result. * * * The definitions thus given are applicable to losses under policies of insurance. When they are adjusted, they are ascertained or determined." In *Stache v. Insurance Co.*, 49 Wis., 89 (5 N. W. Rep., 36), there was a promise by an adjuster that the amount fixed by him would be paid, and it was held that this amounted to an agreement by the company. When Diehl, therefore, adjusted and determined the amount of this loss, if he was an ordinary adjuster, it raised an implied promise on the part of the company to pay it. But it is said that Diehl's powers were limited; that section 8 of defendant's articles provides that he is to adjust losses, "being guided in so doing by such rules and regulations as the company and the board of directors may establish." In itself this clause is no more of a restraint on the powers of the adjuster than exists under general principles of law as to every such officer. All agents are subject in their authority to such rules or restrictions as the principal may prescribe. But it is thought the form of the blank report furnished by the company, which we have heretofore set out, shows that the adjuster had only a right to report and recommend, and not to settle. That he was to report and recommend on these blanks is manifest, but that fact is not inconsistent with his right to fix the amount of the loss. It is not claimed on plaintiff's part that

the adjuster had any right, or, indeed, the ability, to pay the loss. He could only recommend its payment; but his report might well be also a statement of a settlement with the assured.