Charles E. ROBINSON, Appellee,

v.

STATE of Iowa, Appellant.

No. 03–1387.

Supreme Court of Iowa.

Oct. 6, 2004.

Thomas J. Miller, Attorney General, and Kristin W. Ensign, Assistant Attorney General, for appellant.

Larry J. Cohrt and Jay P. Roberts of Roberts, Cohrt, Stevens & Lekar, P.L.C., Waterloo, for appellee.

LARSON, Justice.

Charles Robinson was an inmate at the Iowa Medical and Classification Center when he was struck in the face by another inmate, causing the loss of his only good eye. Robinson filed a tort claim with the State Appeal Board, which denied the claim. Robinson filed suit, but the State moved to dismiss it on the ground it was untimely. The court denied the motion, and we granted the State's application for interlocutory appeal. We affirm and remand.

## I.  *Facts and Prior Proceedings.*

Robinson was injured on November 1, 1999, and on October 30, 2001, he filed a claim against the State under the Iowa Tort Claims Act, Iowa Code ch. 669 (1999). The claim showed Robinson as the claimant and Jay Roberts and James Sheerer as his attorneys of record. The appeal board denied the claim on September 4, 2002, and notified Jay Roberts, one of Robinson's attorneys, of the denial by a letter dated September 5, 2002. The board did not send a notice of denial to Robinson.

On March 7, 2003, Robinson filed suit against the State, which moved to dismiss because the suit was not filed within six months of the appeal board's notice of denial as required by Iowa Code section 669.13:

Every claim and suit permitted under this chapter shall be forever barred, unless within two years after such claim accrued, the claim is made in writing to the state appeal board under this chapter. *The time to begin a suit under this chapter shall be extended for a period of six months from the date of mailing of notice to the claimant* by the state ap-

peal board as to the final disposition of the claim or from the date of withdrawal of the claim from the state appeal board. . . .

Iowa Code § 669.13 (emphasis added).

Robinson resisted the motion on two grounds: (1) The State's mailing of the notice of denial to the plaintiff's lawyers, instead of Robinson personally, did not comply with the statute and therefore did not commence the six-month period of limitations; and (2) the State failed to establish that the letter denying Robinson's claim, showing a date of September 5, 2002, was actually mailed on that date.

We affirm the court's order denying the motion to dismiss. We do so on the second ground—failure by the State to establish grounds for the motion to dismiss. We disagree with the court, however, on the issue of whether notice sent to a claimant's attorney satisfies the requirements of section 669.13.

## II.  *The Motion to Dismiss.*

We have criticized the use of motions to dismiss in these circumstances. In *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178 (Iowa 1991), we discussed the problems:

The reasons are clear enough. In the first place, in filing a motion to dismiss, a defendant gives away all the facts because in ruling on the motion well-pled facts are assumed to be true. Combined with this venerable rule is a more recent one. Under notice pleading a suit will survive a motion to dismiss whenever a valid recovery can be gleaned from the pleadings.

We recognize the temptation is strong for a defendant to strike a vulnerable petition at the earliest opportunity. Experience has however taught us that vast judicial resources could be saved with the exercise of more professional

patience. Under the foregoing rules dismissals of many of the weakest cases must be reversed on appeal. Two appeals often result where one would have sufficed had the defense moved by way of summary judgment, or even by way of defense at trial. From a defendant's standpoint, moreover, it is far from unknown for the flimsiest of cases to gain strength when its dismissal is reversed on appeal.

*Cutler*, 473 N.W.2d at 181 (citations omitted).

■ The present case shows the danger of premature dismissal of a case that, if facts were allowed to be developed, would result in a more informed disposition. The plaintiff's resistance clearly pointed out the defect in the State's position: the notice showed when the letter was *drafted* (September 5, 2002), but that is not the issue. The issue is when the letter was *mailed. See* Iowa Code § 669.13.

■ We will reverse an order denying a motion to dismiss a petition for failure to state a claim only if the petition shows on its face there is no right of recovery under any state of facts. *Ritz v. Wapello County Bd. of Supervisors*, 595 N.W.2d 786, 789 (Iowa 1999). In considering a motion to dismiss, we do not consider any facts not set out in the petition. *Id.*; *Tate v. Derifield*, 510 N.W.2d 885, 887 (Iowa 1994). Even if we were to consider the State's evidence that the letter was dated September 5, that still would not establish the date the letter was mailed. It is undisputed that the letter was dated September 5, 2002, and was received by Robinson's attorney on September 9, 2002. It is possible that the letter was not mailed until September 7, 2002, which would make the plaintiff's petition filed on March 7, 2003, fall within the six-month limitation of section 669.13. No facts are alleged in the petition that would support a conclusion as

a matter of law that the mailing date was September 5, 2002, as the State assumes. We affirm the order denying the State's motion to dismiss, but on a different ground than that cited by the district court.

### III. *The Notice of Denial.*

■ Another issue has been raised, although only in a collateral manner (in the plaintiff's resistance to the motion to dismiss). While resolution of that issue is not critical to our ruling on the motion to dismiss, it is almost certain to arise in further proceedings on remand. The question is whether the appeal board is required by statute to send notice to the claimant personally, or whether sending it to his attorney of record is sufficient.

Robinson argues that the statute only refers to "notice to the claimant," which is unambiguous and means the limitation period will not begin to run until he has personally received notice. The State argues that the word "claimant" must include the claimant's attorney to be consistent with the general rule that notice to an attorney is considered notice to the client and also to give effect to the goals of the legislature in enacting section 669.13. Under the State's interpretation, if sufficient notice is sent to either the client or his attorney, the goal of notice of the denial is met and the limitations period begins.

■ Both parties' interpretations are reasonable. When that is the case, we rely on rules of statutory interpretation provided by statute and our case law. *See Nash Finch Co. v. City Council of Cedar Rapids*, 672 N.W.2d 822, 827 (Iowa 2003). These rules allow the court to consider: the purpose of the statute, Iowa Code § 4.6(1)–(3) (2001); "[t]he common law," *id.* § 4.6(4); "[t]he administrative construction of the statute," *id.* § 4.6(6); and

"[t]he consequences of a particular construction." *Id.* § 4.6(5); *see also Nash Finch Co.,* 672 N.W.2d at 827; *State v. Sailer,* 587 N.W.2d 756, 760 (Iowa 1998).

A. *The statute's purpose.* We first consider the legislature's likely purpose in enacting the statute. *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 283 (Iowa 1983). The primary purpose of the statute is clear: as the title suggests, it is a "Limitation of Actions" statute. Iowa Code § 669.13. We believe the legislature's main goal was to limit the time period in which claimants could bring claims under the Tort Claims Act. *See id.* The second purpose, advising the claimant of the board's action, is also apparent from the statute: "The time to begin a suit under this chapter shall be extended for a period of six months from the date of mailing of notice to the claimant...." *Id.* As we discuss later, interpreting the statute as urged by Robinson would not give effect to both purposes because it would mean that, when notice of denial has not been mailed to the claimant, but instead only to his attorneys, the statute of limitations would never begin to run even though his attorneys had been notified of the board's denial.

■ B. *The common law.* Our courts have long recognized the general rule that "notice to an attorney in respect to a matter in which he is then acting for a client is notice to the client." *Perpetual Sav. & Loan Ass'n v. Van Atten,* 211 Iowa 435, 438, 233 N.W. 746, 747 (1930); *accord Carroll v. Martir,* 610 N.W.2d 850, 859 (Iowa 2000) (stating the general rule that "knowledge of an attorney is knowledge of the client," noting that an "attorney acts as the representative and *alter ego* of his client" (emphasis added) (citing 7A C.J.S. *Attorney & Client* § 180 n. 57, at 284 (1980))); *Superior/Ideal, Inc. v. Bd. of Review,* 419 N.W.2d 405, 408 (Iowa 1988) ("An attorney

may accept service of notice, or waive it, if the attorney has authority to do so. In the case of an appeal notice, a lawyer is presumed to be authorized to acknowledge service." (citations omitted)); *McClelland v. Saul,* 113 Iowa 208, 209–10, 84 N.W. 1034, 1034 (1901) (stating that it is "an elementary principle" that notice to an attorney is treated as notice to the client as long as the attorney is "acting within the scope of his authority" regarding "matters over which his authority extends"); *Jones v. Bamford,* 21 Iowa 217, 219 (1866) ("The knowledge or notice of facts acquired by an attorney or agent when engaged properly in the business of his client or principal, becomes, in law, the knowledge or notice of such fact to the client or principal."); *Walker v. Ayres,* 1 Iowa (Clarke) 449, 454 (1855) (holding that notice of a judgment given to the client's attorney "was the same as if brought directly home to [the client]"); *see also* 7 Am. Jur. 2d *Attorneys at Law* § 148, at 197 (1997) ("Notice to an attorney is effective as notice to the client when the notice is received in the course of the transaction in which the attorney is acting.").

Courts especially adhere to this general rule when, as in this case, the client's attorney is an attorney of record in an ongoing legal proceeding. *See, e.g., Roma v. Indus. Comm'n of Ohio,* 97 Ohio St. 247, 119 N.E. 461, 462 (1918) ("[O]rdinarily in a pending judicial proceeding notice to an attorney of record is notice to his client.... In fact, the rule is even stronger than just stated; for ... the general rule is that in all pending judicial proceedings, wherein the party has an attorney, notice must be given to that attorney as agent and not to the party himself."); *see also* 7A C.J.S. *Attorney & Client* § 185, at 299–300 ("Knowledge of, or notice to, the attorney for a litigant or party to a legal pro-

ceeding, of matters arising in the course of the litigation or proceeding, is ordinarily imputable to such litigant or party.... Also, notice may be imputed as to the rendition or entry of a judgment for or against a client....").  Here, there is no question that attorney Jay Roberts, to whom the notice was mailed, was listed by the claimant as his attorney of record.

Even if we were to conclude that mailing notice to Robinson is required by the statute, we believe substantial compliance would be sufficient.  We have said "substantial compliance" means "compliance in respect to essential matters necessary to assure the reasonable objectives of the statute."  *Superior/Ideal*, 419 N.W.2d at 407–08 (holding service of notice of appeal from tax assessment on clerk of board of adjustment was substantial compliance with the statute requiring service on its "presiding officer").  Here, the purposes of the statute are to advise the claimant of the status of his claim and to start the running of the statute of limitations.  Allowing service of notice on the attorneys of record, as urged by the State, satisfies both goals.

■ C.  *Agency interpretation.*  The appeal board has interpreted section 669.13 to allow mailing of a notice to the claimant's attorney.  Under its rule, "[t]he special assistant attorney general shall notify the claimant *or the claimant's attorney,* in writing, of the board's determination...."  Iowa Admin. Code r. 543—1.8(25A) (1988) (emphasis added).  The agency rule, of course, is not controlling. *See Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.,* 650 N.W.2d 609, 613 (Iowa 2002) (statutory interpretation "is a legal question for the courts, not for agencies").

When reviewing interpretive rules, we must first determine whether the agency was clearly vested by the legislature with the discretion to interpret the statute.  *See*

Iowa Code § 17A.19(10)(*c*), (*l*); *ABC Disposal Sys., Inc. v. Dep't of Natural Res.,* 681 N.W.2d 596, 602 (Iowa 2004); *see also* Arthur Earl Bonfield, *Amendments to Iowa Administrative Procedure Act,* at 61–63 (1998) [hereinafter Bonfield].  If the authorizing statute clearly delegates interpretive authority to the agency, we review the agency's interpretation with deference and will strike it only if it is "irrational, illogical, or wholly unjustifiable."  Iowa Code § 17A.19(10)(*l*).  If the authorizing statute does not clearly delegate interpretive authority to the agency, a court "may substitute its judgment for that of the agency, without any deference, and determine *de novo* whether the agency interpretation was correct...."  Bonfield at 63; *see also* Iowa Code § 17A.19(10)(*c*).  In making the determination of whether interpretive authority has clearly been delegated to the agency, the court,

> using its own independent judgment and without any required deference to the agency's view, must have a firm conviction from reviewing the precise language of the statute, its context, the purpose of the statute, and the practical considerations involved, that the legislature actually intended (or would have intended had it thought about the question) to delegate to the agency interpretive power with the binding force of law over the elaboration of the provision in question.

Bonfield at 63;  *see also* Iowa Code § 17A.19(11)(*a*) (stating that a court "[s]hall not give any deference to the view of the agency with respect to whether particular matters have been vested by a provision of law in the discretion of the agency").

Iowa Code section 669.3 delegates to the board the power to "adopt rules and procedures for the handling, processing and investigation of claims" under the Tort Claims Act. However, we do not find that

the legislature has therein clearly vested the agency with interpretive powers with respect to what type of notice is required to commence the statute of limitations. Nevertheless, our independent interpretation of the statute comports with that of the agency: service on the claimant or the claimant's attorney is sufficient to commence the statute of limitations.

D. *Consequences of interpretation.* Under Iowa Code section 4.6(5), we may consider the consequences of a particular interpretation of a statute. Under Robinson's interpretation of the statute, only the mailing of a notice to him, regardless of whether it has been mailed to his attorneys, would commence the running of the statute of limitations. Under his interpretation, if the State notified the claimant's lawyer, but not the claimant personally, the statute of limitations would never run. We do not believe the legislature would have intended such a result.

For all the reasons stated, we believe that the statute is satisfied when the appeal board mails notice to the claimant or the claimant's attorney of record. Although we disagree with the district court's interpretation of section 669.13, we nevertheless affirm its denial of the State's motion to dismiss. We remand for further proceedings.

**AFFIRMED AND REMANDED.**