# IN THE COURT OF APPEALS OF IOWA

No. 20-1663
Filed May 11, 2022

**LINCOLN SAVINGS BANK,**
　　　Plaintiff-Appellee,

**vs.**

**DEBRA EMMERT,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Black Hawk County, David Odekirk (first entry of default), Joel Dalrymple (second entry of default), and Linda Fangman (foreclosure judgment and motion to set aside default), Judges.

　　　The property owner appeals the district court's denial of her request to set aside a default judgment in foreclosure proceedings. **AFFIRMED IN PART AND VACATED IN PART.**

　　　Gregg Geerdes, Iowa City, for appellant.

　　　Jeffrey W. Courter, David T. Bower, and Roy R. Leaf of Nyemaster Goode, P.C., Des Moines, for appellee.

　　　Heard by May, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Lincoln Savings Bank (the Bank) initiated foreclosure proceedings against Debra Emmert[1] in July 2019. Debra failed to respond, and the Bank twice asked for entry of default, which the court granted both times—on December 31, 2019, and October 2, 2020. In December 2020, the district court entered judgment against Debra for more than $5,000,000 and foreclosed on a property in Cedar Falls and a property in Coralville. Debra appealed. She then moved to set aside the default and, when she did not get the ruling she wanted, filed a motion to enlarge and reconsider. The district court again ruled against Debra, and she filed a second appeal. At the parties' joint request, Debra's two appeals were consolidated; the supreme court transferred the case to us.

## I. Background Facts and Proceedings.

Debra and Dale operated Simpson Furniture Company and were members of Emmert Management L.L.C. In 2015, Simpson Furniture and the management company borrowed $2,932,800 from the Bank. The next year, they borrowed an additional $1,790,000. The furniture store property in Cedar Falls and the Emmerts' personal condo in Coralville were put up as collateral, along with other various items such as vehicles, the store's assets (including inventory), and benefits from life insurance policies. Debra also gave personal guaranties.

---

[1] With two separate notes, the Bank loaned nearly $5,000,000 to Simpson Furniture Company (which Debra and her then-husband Dale Emmert operated) and Emmert Management L.L.C., of which Debra was a member. None of these parties responded to the Bank's foreclosure petition, and judgment was entered against them all jointly and severally. Of the defendants in the foreclosure action, only Debra appeals.

In July 2019, the Bank petitioned to foreclose the mortgage and the security interests, seeking to foreclose the mortgage on the Cedar Falls property, the second mortgage on the condo, and other collateral granted by the security agreements. Phillip Brooks, an Iowa attorney, was served notice on behalf of Debra, and he filed an acceptance of service of original notice and petition on August 7. Debra did not respond to the petition.[2]

On September 11, the Bank sent a written notice of intent to file for default. The notice for Debra was mailed to Attorney Brooks at his law office.

On December 31, the Bank asked the court to enter default against Debra for failure to take action in the case, and the court granted the application the same day.

The Bank later purchased the first mortgage (the more senior lien) on the Coralville condo from another bank. After doing so, the Bank asked for leave to file an amended foreclosure petition, which the court granted.

On August 5, 2020, the Bank filed its amended foreclosure petition, again seeking to foreclose the mortgage on the Cedar Falls property as well as the first and second mortgage on the Coralville condo. The Bank sent Attorney Brooks a copy of the second amended petition by certified mail on August 10.

On September 1, the Bank mailed Attorney Brooks a notice of intent to file for entry of default against Debra.

---

[2] In August, the Bank filed an amended petition, correcting the address of the Coralville store where certain collateral was located. A copy of this petition was mailed to Attorney Brooks—not Debra.

One month later, the Bank moved for default, which the court granted on October 2.

The Bank filed an update of the balances owed on the various notes (the mortgage on the Cedar Falls property and both mortgages on the condo), asserting $5,073,058.37 was due and owed as of October 7. The Bank also asked the court to award it attorney fees and expenses, as allowed by the notes and guaranties, of $170,940.94.

On November 16, Attorney Gregg Geerdes entered an appearance in the foreclosure action on behalf of Debra.

Then, on December 2, the court filed the foreclosure judgment and decree, entering judgment in personam against Debra for the amount owed on the notes and the requested attorney fees ($5,243,999.31 total) with post-judgment interest of $1248.06 per day until paid in full. The Bank was also awarded judgment in rem on the Cedar Falls real estate (up to $3,800,000) and the Coralville condo (up to $2,932,800).

A couple of hours later, Debra—through Attorney Geerdes—filed a resistance to the entry of foreclosure judgment. In the resistance, Debra inaccurately stated[3] that while the court entered a default on October 2, it had not yet entered a judgment. She asked the court not to enter the judgment. In the alternative, she asked for twenty days to "file a motion pursuant to Iowa Rule of Civil Procedure 1.977 to set aside the default judgment." Or, if the court would not

---

[3] Presumably this statement was accurate when the resistance was drafted. But at the time it was filed—at 12:58 p.m. on December 2—it was not. The court's judgment of foreclosure and decree had been filed at 10:57 a.m.

grant more time, she asked that her resistance be considered a motion to set aside and that the court schedule a hearing.

The court took no action on Debra's resistance; it did not schedule a hearing or enter a ruling.

On December 4, the clerk of court issued a special execution to the Black Hawk County Sheriff to foreclose on the Cedar Falls property and one to the Johnson County Sheriff to foreclose on the Coralville condo.

On December 16, Debra appealed the foreclosure judgment and decree.

On January 20, 2021, the Black Hawk County Sheriff held a sale on the Cedar Falls property. The Bank was the highest bidder and was issued a sheriff's deed.

Then, on January 29, Debra moved to set aside judgment and quash the sheriff's sale. She argued she "was not personally or otherwise adequately served in this matter" before the default personal judgment was entered against her, claiming the Bank "obtained acceptance of service from an attorney who was not and never ha[d] been [her] attorney in this matter and who was not authorized to accept this service." As a result, she maintained the court lacked personal jurisdiction over her to enter the default judgment against her. She also argued she was never sent the ten-day notice of default, as required by Iowa Rule of Civil Procedure 1.972, because it was mailed to the same attorney (Brooks). Finally, she argued the judgment should be set aside because at the time of the sale of the Cedar Falls property, the Bank "had directed the issuance of two executions, both of which were outstanding at the time of the sale described above." She

maintained this violated Iowa Code section 626.3 (2019).[4] Debra asserted she was surprised by the default entered against her "as a result of the . . . irregularities in service and notice." She asked the court for the "opportunity to plead her defenses and to assert her claims against [the Bank], including . . . the fact that certain of the documents . . . including the mortgage on [the Coralville Condo] do not contain her authorized signature." In the motion, Debra questioned whether the district court had jurisdiction to consider and rule on her claims, as she had already appealed the entry of the foreclosure judgment to the Iowa Supreme Court.

The Bank resisted Debra's motion. It maintained Brooks was Debra's counsel and had been representing her throughout the foreclosure action, asserting the Bank's counsel had been communicating with Brooks about Debra's interests in the possible foreclosure for more than two years, including communications that took place after Geerdes filed an appearance on November 16, 2020, and even after the December foreclosure judgment was entered. The Bank argued that because Debra was represented by Brooks in the matter and Brooks was properly served, the entry of default and resulting judgment were valid. Additionally, the Bank argued two special executions upon separate judgments relating to the foreclosure on different properties in separate counties were not precluded by section 626.3.

At a hearing on the motion on March 4, Debra testified she hired Brooks to represent her in a replevin action against the Bank but never authorized him to represent her in the foreclosure action. She denied knowing "that a foreclosure

---

[4] A few days later, on February 3, the Bank cancelled the Johnson County sheriff's sale on the condo.

action even existed regarding [her] condominium." Debra testified she was unaware of it until an attorney she hired to represent her in the dissolution of her marriage saw something online and told her she needed to get an attorney for the foreclosure action. When asked by her attorney, Debra denied that she signed the mortgage on the condo; she testified she did not know who signed her name but that it was not her.

At the hearing, Debra argued the district court did not have jurisdiction to "consider anything anyway" after Debra appealed the foreclosure judgment. The Bank agreed, "as a practical matter," that the parties "have to wait until the [Iowa] Supreme Court enters a ruling" on Debra's December 16, 2020 appeal. The court agreed:

> Obviously the appeal confuses matters because once the appeal is filed, the District Court would lose jurisdiction to enter particular orders. I am in no way suggesting that the appellate court is not the primary Court to make a decision. I think that appeal needs to go forward if both parties are agreeing for it to go forward.

The court then ruled from the bench:

> In looking at the issues in this case before me right now, I have the motion to set aside default. The original application for the default was back on December 31, 2019. It included that Defendant Debra Emmert be found in default. That default was granted December 31, 2019.
> As the parties are aware, a default may be set aside for mistake, inadvertence, surprise, inexcusable neglect, or unavoidable casualty. A motion must be filed promptly after the discovery of the grounds but not more than 60 days after the entry of the judgment.
> The actual motion to set aside was not filed until January 29, 2021. More than a year later. So clearly, that motion to set aside is untimely as it pertains to the default judgment entered on December 31, 2019. There was the amended petition which, as I understand it, added the second mortgage of the condo. Adding the second mortgage of the condo did not negate the original petition or the original default.

The second petition was—or second amended petition was filed on August 5, 2020. There was a motion for default filed on October 1, 2020. And the default was entered on October 2, 2020. Again, the motion to set aside the default wasn't filed until January 29, 2021. Clearly more than 60 days after the default.

The side issues here are the allegation that Mr. Brooks was not representing Ms. Emmert and, therefore, the acceptance of service and, most importantly, the notice of intent to file the default should not have been served on him.

While it is true that he did not enter an appearance in this case, it is clear from the exhibits submitted attached to the plaintiff's resistance that Mr. Brooks was representing or was doing a darn good representation that he was representing Ms. Emmert. If Ms. Emmert feels that she has some sort of claim against Mr. Brooks for falsifying representation of her, that's a different issue.

But when I look at the exhibits that are attached to the resistance, it is very clear that Mr. Brooks is indicating he represents Ms. Emmert, and there would be no reason for [the Bank] to think that he was lying to them.

He's sent repeated e-mails. Of significance, when he accepted service on August 7, 2019, he was apparently representing Ms. Emmert in the [replevin action], and by his e-mails was suggesting that he was representing her. The e-mail that defense points out to the effect of "if it gets more adversarial, I'll have to get out" only adds credence to the fact that he was in. Because if you're not in, you don't have to get out.

And that e-mail was sent on March 5, 2020. . . .

It was after the motion for default was granted on the first one. And the March 5, 2020, was, in fact, a few months prior to the amended petition being filed. However, there was no suggestion that Mr. Brooks did, in fact, get out because the e-mails show that he continued to e-mail [the Bank's attorney] in this matter in September of 2020, which was after the amended petition was filed, and December of 2020, which is after the second default was entered.

So the Court has no reason to believe that Mr. Brooks was not representing Ms. Emmert and, in fact, has every reason to believe that he was representing Ms. Emmert in this matter. I can't believe that Mr. Brooks out of the goodness of his heart with no compensation for it was trying to broker a deal when he wasn't asked to broker any deal.

The other thing the Court is taking into consideration is the appearance filed by Mr. Geerdes was filed on November 16, 2020. There was not an application to set aside default then, and there had already been two defaults entered by that point. It wasn't—he didn't even ask to have it set aside after the judgment was entered. He did file a resistance to the entry of the default. But by that time, default had been entered on both October 2, 2020, and December 31, 2019.

It wasn't until that January 29th date that the motion to set aside the default was filed.

So as far as any matters that may be in front of this Court and may be appropriate for this Court to rule on, the motion to set aside default is denied. It is not timely as it pertains to either default entered. And the claim that Mr. Brooks was not representing Ms. Emmert and, therefore, was not an appropriate person to accept service on behalf of Ms. Emmert is not credible to the Court.

As far as the appeal issues go, I will leave that to the appellate court to decide any further matters. But at this time I will not be setting aside either of the defaults.

In a written ruling filed the same day, the court concluded:

The Court found in this matter the [January 29, 2021] motion [to] set aside is untimely. As indicated, the first default judgment was granted on December 31, 2019, and the motion to set aside that default was not even filed until a year later. The second entry of default was entered on October 2, 2020, and the motion to set aside was not filed until almost four months later. As such, the application is untimely.

The Defendant Debra Emmert testified that Philip Brooks was not her attorney and had no authority to file an acceptance of service, nor to receive the notice of intent to file for default. As such, she didn't have notice and should be excused. However, the exhibits attached to the Plaintiff[']s resistance clearly indicate that Philip Brooks was representing Debra Emmert in these proceedings and was, in fact, counsel of record in [the replevin action]. The Court did not find credible Ms. Emmert's assertion that Mr. Brooks was not her attorney after having an opportunity to review the exhibits contained in the Plaintiff[']s resistance.

For the above-stated reasons and the reasons stated on the record, the Motion to Set Aside Default and Quash Sheriffs Sale is denied.

Debra moved to enlarge or reconsider. She argued the judgment that was to be set aside was the December 2, 2020 foreclosure judgment—as neither entry of default constituted a "judgment"—so her January 29, 2021 motion to set aside was timely made within the sixty-day window required by Iowa Rule of Civil Procedure 1.977. She disputed whether the Bank had shown Attorney Brooks was authorized to accept service for her—even if she was aware of his representation

of her in the foreclosure matter. And she argued the amended foreclosure proceeding needed to be personally served instead of notice being given by certified mail. She maintained these failures of service made the resulting judgment void. She also raised, for the first time, that the lack of service deprived her of her due process rights. And Debra challenged whether the Bank having two executions outstanding at once violated section 626.3. The Bank resisted.

On March 25, the court granted the motion in part, expanding its original ruling to add:

> [Debra] takes issue with the Court's finding that the Motion to Set Aside was untimely. The defaults entered in this matter were entered on October 2, 2020 and December 31, 2019. While it is true that the actual money amount was not entered until December 2, 2020, the actual default was entered on both October 2, 2020 and December 31, 2019. As such, the Motion to Set Aside those two defaults the Court finds is untimely. In addition, even if the motion was not untimely, the defendant failed to prove that there was mistake, inadvertence, surprise, excusable neglect or unavoidable casualty that excused her failure to answer in this case. . . . Debra Emmert was well aware of the proceedings and was represented by counsel; therefore, none of those exceptions apply in this case.
>
> As to the issue of multiple executions outstanding at the same time, the Court believed that issue was moot in that the plaintiff did not act upon the Johnson execution; therefore, there was no reason for the Court to make a legal analysis as to whether two special executions could be outstanding under Iowa Code section 626.3 as only one execution was proceeded on. As such, the defendant's motion in regard to the Johnson County special election is denied.

After this ruling, Debra again appealed. She and the Bank jointly requested that our supreme court consolidate the two appeals. The supreme court granted the request before transferring the case to us.

**II. Discussion.**

    **A. Issues Properly before the Court on Appeal.**

    We begin by considering an issue not explicitly raised by the parties in their appellate briefing[5] though both parties and the district court contemplated it—the effect of Debra's first appeal, filed December 16, 2020.

    As both parties conceded at oral argument before this court, Debra deprived the district court of jurisdiction over the merits of this case when she filed her first appeal. *See State v. Mallett*, 677 N.W.2d 775, 777 (Iowa 2004) ("Generally, an appeal divests a district court of jurisdiction."); *Hulsing v. Iowa Nat'l Mut. Ins. Co.*, 329 N.W.2d 5, 7 (Iowa 1983) ("When an appeal is perfected, the trial court loses jurisdiction over the merits of the controversy."). And restoration of jurisdiction to the district court can only be accomplished by "two means: the litigants' stipulation for an order of dismissal or an appellate court's order for limited remand." *Mallett*, 677 N.W.2d at 777; *see also Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 190 (Iowa 2013) ("Ordinarily, the filing of a notice of appeal divests the trial court of jurisdiction, and the appellate court must grant a limited remand to restore jurisdiction to the trial court to rule on any remaining posttrial motions."). Neither of those took place in this case.

    After an appeal, the district "court 'retains jurisdiction to proceed as to issues collateral to and not affecting the subject matter of the appeal.'" *Iowa State Bank*

---

[5] We raise this sua sponte because it is an issue of jurisdiction. *See State ex rel. Vega v. Medina*, 549 N.W.2d 507, 508 (Iowa 1996) ("Because the defense of lack of subject matter jurisdiction may not be waived and subject matter jurisdiction may not be established by consent or estoppel, such a challenge may be raised at any time, even for the first time on appeal, and this court may also raise the issue sua sponte.").

*& Tr. Co. v. Michel*, 683 N.W.2d 95, 110 (Iowa 2004) (citation omitted). For example, in a criminal case, the district court retains jurisdiction to modify the restitution order after a defendant appeals their conviction. *State v. Jose*, 636 N.W.2d 38, 46 (Iowa 2001). Matters of attorney fees are also collateral issues. *See Michel*, 683 N.W.2d at 110. And, of course, the district court retains the power to enforce its orders (in the absence of a stay). *Shedlock v. Iowa Dist. Ct.*, 534 N.W.2d 656, 658–59 (Iowa 1995).

But the issues Debra continued to raise—and which the court continued to rule on—were not collateral issues. The whole thrust of Debra's motion to set aside the judgment and her motion to enlarge and reconsider was meant to get rid of the foreclosure judgment against her, "which would vitiate the case then on appeal." *Mallett*, 677 N.W.2d at 777. "[They were], therefore, not merely collateral." *Id.* Without jurisdiction to consider the motions and issues raised therein, the court's March 4 ruling from the bench and written ruling on the motion to set aside and its March 25 ruling on the motion to expand and reconsider are nullities. *See State v. Hillery*, 956 N.W.2d 492, 501 (Iowa 2021) (concluding the district court's "ruling is a nullity" when "it was filed the day after we granted discretionary review and thereby divested the district court of jurisdiction"). We vacate those rulings. *See Mallett*, 677 N.W.2d at 777.

We do not dismiss Debra's second appeal "because the issue is not a lack of jurisdiction in this court but rather the lack of jurisdiction of the district court." *Id.* at 776. But, since the rulings she challenges with her second appeal are nullities, they have no legal effect. *See, e.g., Opat v. Ludeking*, 666 N.W.2d 597, 606 (Iowa 2003) ("'A void judgment is one that, from its inception, is a complete nullity and

without legal effect.' 'A judgment is void when the court lacks the jurisdiction of the parties or of the subject matter, lacks the inherent power to make or enter the particular order involved, or acts in a manner inconsistent with due process of law.'" (internal citations omitted)). There is nothing left for us to review as it pertains to the second appeal. *See State v. Holbrook*, 261 N.W.2d 480, 482 (Iowa 1978) ("We are a court of review, not a nisi prius court. We cannot 'review' an issue unless it was raised [and decided] in the trial court."). Therefore, we limit our consideration to those issues that arose before Debra filed her second appeal. *See, e.g.*, *Hillery*, 956 N.W.2d at 501 (remanding the issue decided after the district court was divested of jurisdiction without considering the district court's void ruling); *Mallett*, 677 N.W.2d at 777 (vacating district court's ruling on motion for new trial without deciding merits because district court lacked jurisdiction to enter order).

**B. Iowa Rule of Civil Procedure 1.972.**

Now with a focus on the proceedings before the first notice of appeal was filed, we consider that the district court entered the foreclosure judgment and decree on December 2, 2020. Debra filed her first appeal on December 16, without filing a motion to set aside the judgment pursuant to Iowa Rule of Civil Procedure 1.977.[6] This is the appropriate way to raise issues of improper service. *See Dolezal v. Bockes*, 602 N.W.2d 348, 353 (Iowa 1999) (holding a motion to set aside default judgment "is not an appropriate method" when the entry of default and

---

[6] We recognize Debra's December 2 resistance asked the court, in the alternative, to consider it a motion to set aside the judgment. But the district court took no action on Debra's alternative request; it neither set it for hearing nor ruled on it. Debra never raised an issue of the court's inaction to the district court, and she does not raise it here on appeal either.

judgment was "contrary to a rule of civil procedure" such as improper service, rather than due to "mistake, inadvertence, surprise, excusable neglect or unavoidable casualty" as contemplated by rule 1.977). "[B]ecause the default judgment was a final judgment, the [defendant] had to appeal or risk having in force a valid judgment against them." *Id.*

Debra asserts the district court lacked authority to enter default against her because the Bank failed to comply with the requirements of Iowa Rule of Civil Procedure 1.972. We review an alleged failure to comply with rule 1.972 for errors at law. *See Halvorson v. Bentley*, No. 12-0151, 2013 WL 530949, at *1 (Iowa Ct. App. Feb. 13, 2013) (citing *Dolezal*, 602 N.W.2d at 353 (stating non-compliance with requirements of predecessor to rule 1.972 left district court "without authority to enter the order of default")).

Specifically, Debra argues rule 1.972(3) required the Bank to send both her and her counsel[7] notice of the intent to file for default. Rule 1.972 provides the "procedure for entry of default." Rule 1.972(3) governs "notice"; it states:

> a. *To the party.* A copy of the notice of intent to file written application for default shall be sent by ordinary mail to the last known address of the party claimed to be in default. No other notice to a party claimed to be in default is required.
> b. *Represented party.* When a party claimed to be in default is known by the party requesting the entry of default to be

---

[7] We recognize Debra has denied that Brooks ever represented her in the foreclosure proceedings. But she first made that claim to the district court in her January 29, 2021 motion to set aside—more than one month after she filed her first appeal. And the district court made credibility findings as to the claim and ultimately ruled on it in its March 4 order. So this issue falls squarely within Debra's second appeal, which we have already determined we cannot consider.

As we understand Debra's argument, she also raises an alternative claim that even if she was represented by counsel, rule 1.972 requires that both she and counsel be given notice of the intent to file for default. It is this alternative argument we consider on appeal.

> represented by an attorney, whether or not that attorney has formally appeared, a copy of notice of intent to file written application for default shall be sent by ordinary mail to the attorney for the party claimed to be in default. This rule shall not be construed to create any obligation to undertake any affirmative effort to determine the existence or identity of counsel representing the party claimed to be in default.

Debra maintains this rule should be read as conjunctive rather than disjunctive— she argues the rule requires the notice of intent to file for default to be sent to the party *and* the party's attorney. The Bank argues the rule provides for two separate options that hinge on the status of the party; an unrepresented party must be sent the notice of intent to file for default directly, while the notice must be sent to the party's counsel if the party is represented. The Bank maintains it satisfied the rule by mailing notice of its intent to file for default to Attorney Brooks.

Neither party points to, and we have not found, case law specifically interpreting this rule. We recognize rule 1.972(3) came about after our supreme court's ruling in *Central National Insurance Co. of Omaha v. Insurance Co. of North America*, 513 N.W.2d 750 (Iowa 1994). In *Central National*, insurance company obtained a default judgment without giving notice to the defaulting parties. 513 N.W.2d at 752. The defaulting parties moved to set the judgment aside. *Id.* Although there was no rule requiring a party seeking default to provide notice, the defaulting parties argued there was a local custom and practice of providing notice to an attorney of the defaulting party or even to an attorney known to regularly represent the defaulting party. *Id.* at 754. The supreme court noted the "two schools of thought" among attorneys; some recognized "notice in such circumstances as a common courtesy that should be extended" while the other thought "that absolute loyalty to the client is paramount and considers such a

notice as a conflict of interest." *Id.* at 757. The court decided it was "time for [the Iowa Supreme Court] to take the lead." *Id.* It amended the Iowa Rules of Civil Procedure[8] to "make our default rule more fair and consistent by requiring notice before a default is taken." *Id.* The amendment required that "[n]otice to all defaulting parties—not just those represented by counsel—should be given." *Id.*

Both Debra and the Bank argue this case history supports their respective interpretations of rule 1.972(3). The Bank notes that in stating all parties should be given notice, the Iowa Supreme Court referenced a rule from Pennsylvania, which required that in the case of a default judgment, "certification that a written notice of intention to file the praecipe was mailed or delivered to the party against whom judgment is to be entered *and* to his attorney of record, if any." Pa. R. Civ. P. 237.1(a) (emphasis added). The Bank focuses on the differences between Iowa Rule of Civil Procedure 1.972(3) and Pennsylvania Rule of Civil Procedure 237.1(a), noting the Iowa rule omitted the conjunctive "and" and expanded the requirement that notice be sent to the attorney not only if they are of record in the matter, but any time the party seeking default knows the party is represented by an attorney—"whether or not that attorney has formally appeared." *See* Iowa R. Civ. P. 1.972(3)(b). The Bank argues the omission of "and" is intentional and significant, "remov[ing] the explicit requirement to send the notice of default to the party and its attorney."

---

[8] The court's ruling identifies 236 as the rule being amended, but the change is first seen in Iowa Rule of Civil Procedure 231 (1999). Rule 231 was renumbered to rule 1.972 effective February 15, 2002.

Debra offers a different understanding. She suggests the court's ruling in *Central National* was focused on avoiding "bungles" and leveling the playing field for those who are represented by attorneys and those who are not. She argues that sending notices to both the party and their presumed attorney would help prevent some of the "bungles," as mistaken beliefs about a defaulting party's representation would be less troublesome if the defaulting party also received notice. She asserts, "The obvious purpose behind [rule] 1.972(3) is to make sure that there is no confusion between a litigant and counsel and to limit the number of inappropriate defaults being entered."

But we agree with the Bank's proffered interpretation of rule 1.972(3): the rule provides mutually exclusive notice requirements depending on whether a party is represented or not. This reading is supported by Iowa Rule of Professional Conduct 32:4.2(a), which prevents a party's lawyer from communicating directly with an opposing party known to be represented by counsel about the matter at issue.[9] Plus, Iowa Rule of Civil Procedure 1.972(2) provides what is necessary in the application of the party requesting default. It requires the application to

> contain[] a certification that written notice of intention to file the written application for default was given after the default occurred and at least ten days prior to the filing of the written application for default. A copy of the notice shall be attached to the written application for default.

_____

[9] Iowa Rule of Professional Conduct 32:4.2(a) states:
> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Iowa R. Civ. P. 1.972(2). As the Bank points out, rule 1.972(2) uses the singular of "notice," which also supports the interpretation that only one notice—to either an unrepresented party *or* a represented party's attorney—is required. Because we conclude that the requirements of rule 1.972(3) are met by mailing notice to just the defaulting party's attorney, and Attorney Brooks was sent notice here, Debra has not established the Bank failed to meet the notice requirements.

Next, Debra takes issue with the Bank's certifications in both its first and second motions for default. In the first, the Bank stated Debra was served by acceptance of service filed by "her attorney" Brooks. In its second application, the Bank stated Debra was served by certified mail "through counsel of record." Debra argues these certifications are "seriously inaccurate" and "misled" the court because Attorney Brooks never filed an appearance in the foreclosure proceedings. She maintains "the false certifications are . . . an independent reason for why the judgment in this matter is void under rule 1.972." While we understand the distinction Debra relies on, we are not convinced the Bank's mischaracterization of Brooks being "attorney of record" is a fatal error. Rule 1.972(3) required the Bank to send notices to Brooks "whether or not that attorney has formally appeared." And there is no dispute that the Bank did, in fact, give Attorney Brooks notice as it claimed in the certifications.

**C. Iowa Rule of Civil Procedure 1.974.**

Debra argues "neither [the Bank] nor the clerk of court appeared to comply with Iowa Rule of Civil Procedure 1.974 as the notice required by this rule was not sent." Rule 1.974 states:

When any judgment other than one in rem has been taken by default against a party served with notice delivered to another person as provided in rule 1.305(1), the clerk shall immediately give written notice thereof, by ordinary mail to such party at that party's last known address, or the address where such service was had. The clerk shall make a record of such mailing. Failure to give such notice shall not invalidate the judgment.

Even assuming Debra was not given written notice, we cannot provide her the remedy she requests. The rule explicitly provides that "[f]ailure to give such notice shall not invalidate the judgment." Iowa R. Civ. P. 1.974.

**D. Iowa Rule of Civil Procedure 1.305.**

Next, Debra argues the district court erred in entering default judgment against her because she was not properly served with notice of the foreclosure action. She argues, "Nowhere in [rule 1.305] does it provide that an attorney can be served or that an attorney is authorized to accept service on behalf of a litigant."[10]

But rule 1.305(12) provides that personal service may be made "[u]pon any individual . . . either as provided in these rules, as provided by any consent to service or in accordance with any applicable statute." "Under rule 1.305(12)[,] a party, his agent *or attorney* may consent to service." 13 Julie L. Pulkrabek & Gary J. Schmit, Iowa Practice Series: Probate § 6:6 (Oct. 2021 update) (emphasis added). Plus, "[o]ur courts have long recognized the general rule that 'notice to an attorney in respect to a matter in which he is then acting for a client is notice to the

---

[10] Debra argues an attorney cannot accept service on behalf of their client. She also argues that because Attorney Brooks was not actually her attorney, he could not accept service. We consider the former argument but not the latter—the claim Attorney Brooks was not actually representing her in the foreclosure proceedings was not raised until Debra's motion to set aside the judgment. We cannot consider it as part of this appeal.

client.'" *Robinson v. State*, 687 N.W.2d 591, 594 (Iowa 2004) (quoting *Perpetual Sav. & Loan Ass'n v. Van Atten*, 233 N.W. 746, 747 (Iowa 1930)); *see also Superior/Ideal, Inc. v. Bd. of Rev.*, 419 N.W.2d 405, 408 (Iowa 1988) ("An attorney may accept service of notice, or waive it, if the attorney has authority to do so.").[11]

**III. Conclusion.**

Because Debra's first appeal divested the district court of jurisdiction, all rulings that came after December 16, 2020, are nullities; we vacate them. Limiting our consideration to the issues that arose before Debra's first appeal,[12] Debra has not shown an error in notice or service that invalidates the foreclosure judgment against her. We affirm the December 2, 2020 foreclosure and judgment decree.

**AFFIRMED IN PART AND VACATED IN PART.**

---

[11] In passing, Debra asserts "the judgment against [her] is also void under the procedural due process provision of the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution." This argument is not adequately developed for our review. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994). Also, the claim appears to be based on Debra's assertion that Attorney Brooks was not representing her in the foreclosure proceedings, which we have already decided is outside the scope of this appeal.

[12] In her appellate brief, Debra also raises issues regarding the district court's denial of her motion to set aside the judgment and quash the sheriff's sale. She argues (1) her January 29, 2021 motion to set aside was not untimely because the sixty days provided in Iowa Rule of Civil Procedure 1.977 runs from the date of the foreclosure judgment and decree—filed December 2, 2020—and not the entries of default on December 31, 2019, and October 2, 2020; (2) the court wrongly concluded Attorney Brooks represented her in the foreclosure proceedings, and because he was not representing her in this matter, his acceptance of service on her behalf was invalid, making the resulting judgment void; (3) the Bank had two outstanding executions at the same time, which violates Iowa Code section 626.3; (4) even if the foreclosure judgment was voidable—not void—then the district court should have set aside the judgment because of "excusable surprise, neglect or mistake," as contemplated by rule 1.977.

We conclude each of these issues are "second appeal" issues, so we do not consider them.